JOHN HOLLLAND, APPELLANT, vs. THE STATE OF FLORIDA, APPELLEE.

12   117<br>e44   462

1. When the question of malice has arisen in cases of homicide, the matter for consideration is, whether the act was done with or without just cause or excuse. A wrongful act done intentionally, without just cause or excuse, is said to be done maliciously.

2. The implication of malice arises in every instance of homicide and in every charge of murder, the fact of killing being first proved, the law will imply that it was done with malice.

3. To rebut the implication of malice, all the circumstances of accident, necessity or infirmity, are to be satisfactorily proved by the prisoner, unless they arise out of the evidence produced against him.

4. If the evidence proves a previous grudge or bad blood, or menaces, or expressions of vindictive feeling, or a former attempt on the part of the accused to do the deceased some great bodily harm, there can be but little hesitancy in declaring that the killing was done upon "express malice," unless it can be shown, that at the time of the killing, the accused was smarting under a recent and great provocation, calculated to arouse sudden and violent anger.

5. The law implies malice from any deliberate and cruel act against another, however sudden; and if the natural consequence of the act would be the death of another, a court and jury may fairly infer that it was done with intent to kill such other person, and is, therefore, murder. An act is said to be deliberate within the meaning of the law when it is voluntarily done.

6. The natural and necessary inference is, that a cruel act, wilfully done, without apparent excuse, is done "*malo animo*," in pursuance of a wrongful and injurious purpose, *previously*, though perhaps suddenly formed, and if death ensues from such act, it is "a homicide with malice aforethought," which is the true definition of murder.

7. When from the evidence the jury are satisfied of the previous existence of malice in the slayer, its continuance down to the perpetration of the homicide must be presumed, unless there is evidence to rebut it and show the wicked purpose had been abandoned.

8. When an antecedent grudge has been proved, and there is no satisfactory evidence to show that the wicked purpose had been abandoned, it must be clearly shown to the court and jury that the provocation was great, in order to warrant them in finding that the killing was on the recent provocation, and not on the old grudge.

9. Whenever a dangerous weapon is used against an unarmed adversary, even upon reasonable provocation, the killing will be murder and not manslaughter, for the law implies from the use of a dangerous weapon that the intent was to kill, and not to fight on equal footing.

10. There is no means by which an Appellate Court can ascertain if there was a rational doubt in the minds of the jury as to the guilt of the accused. When a case of homicide is brought to this court, on appeal, the grade of the offence must be determined by the evidence in the record.

This case was argued at Lake City and decided at Tallahassee.

Appeal from Suwannee Circuit Court.

A statement of the case is contained in the opinion of the court.

*J. J. Finley* for Appellant.

At the Fall Term of the Circuit Court for the county of Suwannee, the appellant was arraigned, tried and convicted on an indictment for the murder of Melvin Brock.

I. It is contended for the appellant, that the evidence used upon the trial and presented in the record now before the court, made out a case of manslaughter only, and not murder, and consequently did not warrant the finding of the jury in the court below.

If it can be shown from the evidence or by inferences from the circumstances of the case, that the offence was of a mitigated character, then the verdict of the jury should have been manslaughter and not murder. Roscoe's Cr. Ev., 664.

Was the killing in this case murder ?

To answer this question satisfactorily, demands a nice and accurate examination of the law, defining the crime of murder—a close investigation of the evidence in the case and a careful and patient consideration of the effect which should be given to it.

What constitutes murder ?

According to the common law " murder is where a person of sound memory and discretion, unlawfully kills any reasonable creature in being, in the peace of the State, with malice prepense or aforethought, either express or implied."

From this it doth appear, that *malice aforethought* is an essential ingredient in the crime of murder, and that in its absence there can be no murder.

But this malice, without which no killing can be murder, may be either *express* or *implied.*

What is express malice ?

It is express where, one with a sedate and deliberate mind and formed design, kills another, as by lying in wait, &c. U. States Cr. L., (Lewis) 354.

What is implied malice ?

It is implied by law from any deliberate cruel act, committed by one person against another, however sudden. U. States Cr. L., (Lewis) 354.

Now, let us apply these legal tests to the evidence in this case, and if, upon being fairly tried by them, it does not

120 SUPREME COURT.

Holland vs. The State of Florida—Argument of Counsel.

make out a case of murder, then it will be made manifest that the conviction of the appellant in the court below was erroneous and should be reversed.

1. It is not to be presumed that the parties fought upon the old grudge, unless it appears from the whole circumstances of the fact. 1 Hawk. P. C., ch. 31, sec. 30.

The evidence shows that the deceased fought upon the old grudge, but that the accused fought upon a fresh provocation.

2. Where fresh provocation intervenes between preconceived malice and the death, it ought clearly to appear that the killing was upon the antecedent malice. U. S. Cr. L., (Lewis) 355; Am. Cr. L., sec. 955.

3. The accused is entitled to the full benefit of any facts proven on the trial, which tend to prove the intent with which the homicide was committed, and which tend to show that it was without that legal malice which constitutes murder. Roscoe's Cr. Ev., 663, note 1.

4. Where the provocation was recent, it rebuts the evidence of malice. Roscoe's Cr. Ev., 684.

5. Where death ensues from a sudden transport of passion or heat of blood, if upon reasonable provocation and without malice, or upon a sudden combat, it will be manslaughter. Roscoe's Cr. Ev., 638.

II. It is contended for the appellant that the verdict of the jury was contrary to law, because they did not give the accused the benefit of the reasonable doubt fairly arising on the evidence as to whether he was guilty of murder or manslaughter, to the benefit of which he was entitled by the law of the land, which law was given them in charge by the court.

In aid of the authorities already cited, I cite: Am. Cr. L., sec. 990, (latter clause); Ibid., 926, note p; U. States Cr. L., (Lewis) 394; see charge to the Jury in Commonwealth vs. Poke, Am. Cr. L., §979.

*James Banks* for the Attorney General.

Homicide is, defined by Wharton on Criminal Evidence, page 949, sec. 945, 952, 930; East's Pleas of the Crown, page 214; Raymond's Reports, page 1455; State vs. Jacob Johnson, 2d Jones' N. C. Repts., page 247; State vs. Madison Johnson, 1st Iredell Repts., page 354; Manslaughter, East's P. C., page 230.

When two are fighting and a third, unconnected, steps up and kills one, it is murder. Wharton's Criminal Law, page 975, sec. 973.

If doubtful whether the act was murder or manslaughter, the jury should give the benefit of the doubt and find the lesser offence. See Wharton on Cr. Law, page 700.

The Judge charged the jury to give the benefit of the doubt and read the statute on manslaughter. Court opposed to setting aside verdicts when the facts have been fairly submitted to a jury. State vs. Jeffrey, 3d N. C. Rep., page 487, and see Wharton on Criminal Law, 3110, 305.

Judge not to interfere with province of Jury. Graham & Waterman on New Trials and References.

Where merits are fairly submitted to the jury, their verdict shall stand. Graham & Waterman on New Trials, page 362, and onward; Second Archbd. Practice, 222.

Under certain circumstances verdict will not be set aside, even if against evidence. Graham & Waterman on New Trials, page 380, and onward.

There were other persons present at the killing who could have been examined by defendant as the record shows, and doubtless would have been if they could have bettered his case.

Court will not grant a new trial even if *doubtful.* Graham & Waterman on New Trials, page 388.

16

122          SUPREME COURT.

Holland vs. The State of Florida—Opinion of Court.

When grounds are technical, not granted. Same authority.

DOUGLAS, J., delivered the opinion of the Court :

The prisoner, John Holland, was indicted at the Fall Term of Suwannee Circuit Court for the killing of Melvin Brock.

On the trial he was found guilty of murder, and was sentenced by the court to suffer the penalties of the law, from which sentence he has appealed to this court. His counsel have endeavored to show in argument that the offence was manslaughter and not murder, and now asks that the judgment of the Circuit Court of Suwannee county be reversed and a new trial granted to the prisoner.

The material facts in the case, as disclosed by the evidence, are : That on the 2d day of August last, the prisoner and the deceased, together with other persons, had on that day been employed at work pulling fodder; that while thus in company a dispute arose between the prisoner and the deceased, in relation to a small sum of money, claimed to be owing from the deceased to the prisoner—the one claiming more than the other was willing to admit to be due, and both asserting their statement of the amount to be correct. Some offensive language was used by the prisoner, and angry words were employed by both parties. Both were at the time armed with pocket knives, which they had in their hands at the time the dispute arose. The deceased stated to the prisoner that he did not want to fight him, but that he must retract the " damned lie " which he had given him, or he would have to fight. The prisoner refused to retract the language complained of by the deceased; and John Barnes, one of the witnesses who was present, seeing that a difficulty was likely to occur, told them to shut up their knives. The deceased shut up his knife and put it into his

pocket, but the prisoner refused to do so, saying he would not shut up his knife for any man. After this the offensive language was several times repeated by the prisoner, who dared the deceased to strike him. The prisoner then made a gesture as if going to cut the deceased, who turned from him in the act of running, at which time the prisoner cut at him, and cut his shirt on the shoulder near the under part of the arm, and pursued him until stopped by those present, and the knife was taken from him. The deceased then came back and tried to reason the case with the prisoner, who was much excited, crying and cursing, and saying he would shoot the deceased if he did not pay him.

The parties were together that evening for some time afterwards, but no further difficulty occurred, and they separated without a reconciliation.

On the next afternoon, being the Sabbath, in returning from preaching, the prisoner and deceased met, and the quarrel was again renewed, but it does not distinctly appear who commenced it.

James Holland, the brother of the prisoner, was then present, with one or more of the persons who had been present on the day before. There is a good deal of testimony as to what took place at this second meeting, but the important facts are few, and about them there is no conflict of evidence.

From this testimony we learn that the deceased, when talking about the occurrence of the previous day, said to the prisoner, "if you will take back the damned lie which you gave me on yesterday, I will settle it with you without a fuss; if not you have got me to fight." That the prisoner refused to retract what he had said, and that offers and propositions were then made by the deceased, who was the larger and stronger of the two, to make it a fair fight. These offers and propositions were refused by the prisoner, who

said " he would not fight him a fair fight, but when he fought him he would go into him."

After some more words between the parties, the prisoner took his coat off and was about to engage in a combat with the deceased, when James Holland, the brother of the prisoner, interposed and said to the deceased, "you shan't fight where I am." While these and other words were passing between the deceased and James Holland, the prisoner stepped a short distance and obtained a knife from a person who then had it, and returned to where he had been standing.

During the time the prisoner had turned away to get his knife, his brother and the deceased had confronted each other, and James Holland had very roughly pushed or struck the deceased in the breast, shoving him out of his tracks, and had received in return a blow in the face which staggered him back. On recovering from the effect of the blow, James Holland and the deceased were in the act of closing in combat, or had hold of each other, the witness does not remember which, when John Holland, the prisoner, ran up and struck the deceased two blows with a knife, inflicting two wounds which proved mortal, and from the effects of which the deceased died in less than an hour.

Upon this state of facts, it is argued on behalf of the prisoner that the offence of which he is guilty is not murder but manslaughter, and that having been convicted of murder, he is entitled to a new trial. There were no exceptions taken to the ruling of the Judge on the trial in the court below, and the single question for this court to determine is, whether the evidence shows the homicide to have been committed under such circumstances as will make it murder, or is there such absence of malice as to reduce it manslaughter.

Murder is defined to be the voluntary killing of any person in the peace of the State, with malice, prepense or afore-

thought, either express or implied by law. The sense of which word *malice* is not confined to a particular ill-will to the deceased, but is intended to denote an action flowing from a wicked and corrupt motive, a thing done *malo animo*, where the fact has been attended with such circumstances as carry in them the plain indications of a heart regardless of social duty and fatally bent upon mischief. East's Pleas of the Crown, ch. 5, sec. 2.

Lord Holt has defined malice, when used in a legal sense, to be a term importing directly wickedness, excluding a just cause or excuse.

In the case of the King vs. Hawey, Best, Judge, said, "the legal import of this term, (malice) differs from its acceptation in common conversation. It is not as in ordinary speech only an expression of hatred and ill-will to an individual, but means any wicked or mischievous intention of the mind. Thus in the crime of murder, which is always stated in the indictment to be committed with malice aforethought, it is neither necessary in support of such indictment to show that the prisoner had any enmity to the deceased, or would proof of absence of ill-will furnish the accused with any defence, when it is proved that the act of killing was intentional, and done without any justifiable cause. 2 Barn & Cres., 268.

When the question of malice has arisen in cases of homicide, the matter for consideration is, whether the act was done with or without just cause or excuse. A wrongful act done intentionally without just cause or excuse, is said to be done maliciously. 10 Barn & Cres., 272.

The implication of malice arises in every instance of homicide, and in every charge of murder, the fact of killing being first proved, the law will imply that it was done with malice, and all the circumstances of accident, necessity or infirmity, are to be satisfactorily proved by the prisoner, unless they arise out of the evidence produced against him.

East's Pleas of the Crown, ch. 5, sec. 12; Foster's Cr. Law, 225, 255; 1 Hale P. C., 455; Commonwealth vs. Webster, 5 Cush., 320; 1 Hill's Rep., 277; 2 Mason's Rep., 91; The King vs. Oneby, 2 Ld. Raym., 1485; 1 Grevnl. on Ev., sec. 34.

Usually, courts and juries have little or no difficulty in determining if the killing was upon express malice. If the evidence proves a previous grudge, quarrel or bad blood between the accused and the deceased, which had not at the time of the killing been reconciled, or if there be proof of menaces or expressions of vindictive feeling towards the deceased by the accused, or a former attempt on the part of the accused to do the deceased some great bodily harm, there can be but little hesitancy in declaring that the killing was upon express malice, unless it can be shown that at the time of the killing the accused was smarting under some great provocation, calculated to arouse sudden and violent anger.

In cases of homicide, where the grade of the offence depends on the malice implied by law, it may sometimes become difficult for courts and juries to determine whether the offence is murder or manslaughter. Out of tenderness to the frailty of human nature, if upon sudden and violent passion, occasioned by some great provocation, one person kills another, the law palliates the criminality of the offence, and makes the crime manslaughter, which otherwise and without the provocation, would be murder. When the law is thus merciful, it is not to be wondered at that courts and juries, who are but men and have the sympathies and feelings of men, should sometimes permit offenders to escape who truly deserve the extreme penalty of the law.

There are some marked and well defined distinctions between the crime of murder and manslaughter, which if carefully considered, will in most cases enable courts and juries

to distinguish between them, and to escape the reproach of setting offenders at liberty to depredate upon society.

In cases where express malice is proved, there can be no difficulty, and it is only in cases where the malice is implied by law that there is difficulty in determining the grade of the offence.

When a man commits an unlawful act, unaccompanied by any circumstances justifying its commission, it is a presumption of law that he has acted advisedly, and with an intent to produce the consequences which have ensued.

If the natural consequences of the act would be the death of another, a court and jury may fairly infer from the act that it was done with intent to kill such other person, and they will be warranted in finding that it was done with malice, and is therefore murder. 1 Archibold's Cr. Prac. and Plead., 393.

If the commission of the act is attended by such circumstances as to denote that it flows from a wicked and corrupt motive, that it was done *malo animo*, and with a wicked and mischievous intention of a mind regardless of human life, there can be no difficulty in declaring it to be murder, if death ensues from such act.

The law implies malice from any deliberate cruel act against another, however sudden, and the act is deliberate within the meaning of the law when it is voluntarily done. East's Pleas of the Crown, ch. 5, sec. 2.

The wilful and voluntary act of destroying the life of another, is an act wrong and unlawful in itself, injurious in the highest degree to the rights of another, being the greatest wrong which can be done to him, contrary to the laws of nature as well as society, and in violation of the plainest dictates of conscience. The natural and necessary conclusion and inference from such an act wilfully done, without apparent excuse, is, that it was done *malo animo*, in pursuance of a wrongful, injurious purpose, *previously,*

though perhaps, suddenly formed, and is therefore, " a ho-
micide with malice aforethought, which is the true definition
of murder." Commonwealth vs. York, 9 Metcalf's Rep.,
104.

We have seen that every homicide is in law presumed to
be murder ; and when the killing has been proved, the ac-
cused must show that it was attended with circumstances of
accident, necessity or infirmity, to reduce it to a lower
grade of crime.

" Manslaughter is principally distinguishable from mur-
der in this: that though the act which occasions the death
be unlawful, or likely to be attended with bodily mischief,
yet the malice, either express or implied, which is the very
essence of murder, is presumed to be wanting, and the act
being imputed to the infirmity of human nature, the correc-
tion ordained for it is proportionally lenient." East's Pleas
of the Crown, ch. 5, sec. 4.

From the above distinction between murder and man-
slaughter, it will be seen "that the true nature of man-
slaughter is, that it is homicide mitigated out of tenderness
to the frailty of human nature, and that the law, in making
allowance for man's infirmity, supposes that when assailed
with violence or great rudeness, he is inspired with sudden
impulse of anger, and, if before reasonable time is given for
cool reflection and for his passion to subside, he slays his
assailant, it is regarded as done through heat of blood and
violence of anger, and not through malice or that cold-
blooded desire of revenge which more properly constitutes
the feeling, emotion or possion of malice."

To entitle the accused to the benefit of this humane inter-
pretation of the law, the provocation upon which he acts
must be reasonable and sufficient, and such as would ordina-
rily and naturally excite a reasonable man to violent anger,
and cause him to lose control of his passion. It has been
justly said " that passion without provocation, or provoca-

tion without passion, is not sufficient; and where there is both passion and provocation, the provocation must be reasonable and sufficient."—State of Penn. vs. Honeyman; same vs. Bill; same vs. McFall, Addison's Rep., 149, 162, 256; same vs. Robinson, Ib. 248.

In case of a mutual combat, in order to save the party killing from the guilt of murder, not only must the provocation be reasonable and the occasion sudden, but the party assailed must be put on an equal footing in point of defence, for even upon reasonable provocation, if one who is armed with a dangerous weapon attacks an unarmed adversary and kills him, it will be murder and not man-slaughter, for the use of a dangerous weapon shows the intent was to kill and not to fight.—East's Pleas of the Crown, 242; State vs. Marten, 2 Iredell's Rep., 116; State vs. Johnson, 1 Iredell's Rep., 354; State vs. Scott, 4 Iredell's Rep., 409; 28 Miss. Rep., 688; 1 Ohio Rep., 66; 2 Hill's So. Ca. Rep., 619.

In the case of the State vs. Scott, it appeared that the deceased had threatened the prisoner about three weeks before that he would kill him; that they met in the street on a star-light night, when they could see each other; that the deceased pressed for a fight, but the prisoner retreated for a short distance; that when the deceased overtook him, the prisoner stabbed him with some sharp instrument, which caused his death, and at the time of this meeting the deceased had no deadly weapon. It was held, that in such a case to mitigate the offence from murder, it must appear from the previous threats, and the circumstances attending the rencontre, that the killing was in self-defence— the presumption being that the killing was malicious.

This decision is in strict accordance with the English and American cases, and with the text of approved elementary writers—that whenever a dangerous weapon is used against an unarmed adversary, even upon reasonable provocation,

17

the killing will be murder and not man-slaughter, for the law implies the intent was to kill and not to fight on equal footing.

It is difficult to say what will or will not amount to reasonable and sufficient provocation, and each case must, in a great measure, depend upon the circumstances that attend it. No court can undertake to say what provocation will extenuate the killing, but must decide in each case if the provocation given was reasonable and sufficient. While the books do not undertake to say what provocation will be reasonable, they are very clear and explicit as to what will not be sufficient. Thus it is laid down in East's Pleas of the Crown, ch. 5, sec. 20, that "words of reproach, how grievous soever, are not provocation sufficient to free the party killing from the guilt of murder; nor are contemptuous or insulting actions or gestures without an assault upon the person; nor is any trespass against lands or goods. This rule governs every case, where the party killing upon such provocation made use of a deadly weapon, or otherwise manifested an intention to kill or to do some great bodily harm." The law as thus laid down by this able and approved writer, has been adopted by the courts of both England and America.

With these views of the law of homicide as applicable to this case, we will proceed to the consideration of the case before us.

The prisoner, John Holland, was indicted at the Fall Term of the Circuit Court for Suwannee County, for the wilful murder of Melvin Brock, and upon the trial was found guilty, and sentenced to be hung. He has appealed from the sentence to this court, and we are now to consider and determine if there were any circumstances attending the killing that should reduce the grade of his crime from murder to man-slaughter, or in other words, was there that absence of malice either express or implied that would render the killing man-slaughter and not murder?

The evidence shows that on the 2d of August, the prisoner and the deceased had a dispute and quarrel about a small sum of money due from the deceased to prisoner, and that the prisoner then made threats against the deceased, that he would shoot him if he did not pay him, and attempted to do deceased some great bodily harm with a dangerous weapon then in his possession. That very soon after this, the deceased attempted to reason the case with the prisoner, who was much excited, crying and cursing, and saying he would shoot the deceased if he did not pay him. The evidence further shows, that the parties were together for some time afterwards, and that no reconciliation took place, and that they parted without a friendly understanding or becoming reconciled.

Upon this state of facts, if the prisoner had on the next day met the deceased, and without any further quarrel or words killed him, it cannot be doubted for a moment that the killing would have been murder upon express malice.

Let us now examine, if what subsequently took place has changed the grade of guilt, and made the killing only manslaughter, as is now contended for on behalf of the prisoner.

It will be seen from the evidence, that on the next afternoon the prisoner and the deceased were thrown together again in returning from preaching, and the quarrel was renewed; but it does not clearly appear who commenced it. At that time several persons were present, and among them, James Holland, the brother of the prisoner. Offers were made to settle the dispute between the prisoner and the deceased. It was offered on the part of the deceased, that if the prisoner would "take back the damned lie which had been given on the day before, he would settle it with the deceased without a fuss, if not you have got me to fight." This the prisoner refused to do, saying he never took back anything he said. After this a proposition was made by the deceased, (who was the larger and stronger of the two,) he

offered to lay down and give the prisoner the advantage, by letting him take his hold and thus fight him, but the prisoner declined to do so, and said: " I will not fight you a fair fight, but whenever I fight you, I will go into you."

Very soon afterwards the prisoner took off his coat at the request of the deceased, preparatory to a fight, and the parties were in the act of engaging in combat, when James Holland, the brother of the prisoner, interposed and said to the deceased, "you shan't fight where I am." This interposition on the part of James Holland produced words between him and the deceased, which led to blows, as will be seen from a statement of the evidence. While James Holland and the deceased were in angry discussion, and before any blow had passed, the prisoner went a few steps to get his knife, which was in the possession of one of the persons present, and on his return, seeing his brother and the deceased confronting each other and about to close, or already closed in combat, he ran up and struck the deceased two blows with a knife, which proved mortal in a short time.

From this uncontradicted statement of facts, can there be a doubt that the killing of Malvin Brock was done *malo animo ;* that it was intentional and without reasonable provocation or justifiable cause? The attendant circumstances " carry in them the plain indications of a heart regardless of social duty, and fatally bent upon mischief," which is the true and legal definition of that implied malice constituting the guilt of murder. The use of a dangerous weapon, the probable consequence of which would be the death of another, shows the intent was to kill and not to fight, and there being no reasonable or sufficient provocation, the law infers the act was done with a wicked and mischievous intention of a mind regardless of human life.

It was urged with much earnestness and ability at bar, that the attempt of the prisoner to cut the deceased with a knife on the day preceding the one on which the homicide

took place, together with the threats then made, do not establish the existence of malice, but the killing was the result of the recent provocation, and that the jury were not warranted in inferring malice from these circumstances.

We cannot give our assent to this position. In our opinion these acts are of the most weighty character to prove the existence of an antecedent grudge, which is the very essence of express malice.

In the case of The State vs. Ford, 3 Strobh., 517, and Keener vs. The State, 18 Geo. Rep., 194, it was held, "that the remoteness or nearness of time, as to threats and declarations, pointing to the act subsequently committed, make no difference as to the competency of the testimony to prove malice."

"When from the evidence the jury are satisfied of the previous existence of malice in the slayer, its continuance down to the perpetration of the homicide must be presumed, unless there is evidence to rebut it and show that the wicked purpose has been abandoned."

When it becomes necessary to decide whether the killing was upon an antecedent grudge or on a recent provocation, in order to determine the guilt of the prisoner as to murder or manslaughter, we hold the rule to be this: When an antecedent grudge has been proved and there is no satisfactory evidence to show that the wicked purpose has been abandoned, it must be clearly shown to the jury that the provocation was a grievous one in order to warrant them in finding that the blow was struck on the recent provocation and not on the old grudge.

In some of the States it has been decided that when a deliberate purpose to kill or to do great bodily harm is ascertained, and there is a consequent unlawful act of killing, the provocation, whatever it may be, which immediately precedes the act, is to be thrown out of the case and goes for nothing, unless it can be shown that this purpose was

abandoned before the act was done. State vs. Johnson, 3 Iredell's Rep., 354; State vs. Ferguson, 2 Hill's S. C. Rep., 619; State vs. Jane, 4 Iredell's Rep., 113; State vs. Tolley, 3 ib., 424; Stewart vs. The State, 1 Ohio Rep., 66.

It is assigned as error "that the jury in making and rendering their verdict, did not give to the accused the benefit of the reasonable doubt fairly arising on the evidence as to whether he was guilty of murder or manslaughter, to the benefit of which doubt the accused was entitled by the law of the land, and which was given in charge by the court."

We can see no means by which this court can ascertain if there was a rational doubt in the minds of the jury as to the guilt of the prisoner. On this point they were properly charged by the court as to the law, and we presume, from the facts of this case, they entertained no reasonable doubt of guilt.

If the evidence established that it was a case of homicide, without malice and upon reasonable provocation, it would then be the duty of this court to grant the accused a new trial, regardless of any doubt or absence of doubt on the minds of the jury, which we cannot know existed. But from the views herein expressed by the court, it will be seen that we are of opinion that the jury might well find the killing to have been upon express malice, or upon implied malice, arising from the circumstances attending the killing.

The judgment and sentence of the court below is affirmed, which will be certified to the Judge of the Suwannee Circuit, in order that the said judgment and sentence may be carried into effect.