ELVIN E. JEFFCOAT, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error*.
138 So. 385.
En Banc.
Opinion filed November 12, 1931.
Petition for rehearing denied January 4, 1932.

*Joseph W. Nichols,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

GRAY, Circuit Judge: Plaintiff in error, hereinafter called the defendant, was indicted on the 28th day of October, 1930, for the murder of his wife, Fannie Jeffcoat,

and Oscar Jeffcoat, T. Hatfield and Mary Jane Hall were indicted as accessories after the fact. A severance was granted and the defendant, Elvin E. Jeffcoat, was convicted of murder in the first degree and sentenced to death, to which judgment the defendant takes writ of error.

It appears from the evidence that on October 14, 1930, at about 11 o'clock at night, the deceased, Fannie Jeffcoat, was found lying on a road in Pinellas County between St. Petersburg and Clearwater in an unconscious condition. She was found by a passing motorist and was carried to a hospital in Clearwater where upon an examination it was found her head had been beaten with a blunt instrument and her skull was crushed and fractured. She never regained consciousness and died on October 16, 1930, as a result of the wounds inflicted. The defendant has filed nineteen assignments of error, five of which have been expressly abandoned.

On November 7, 1930, the four defendants filed a motion for a change of venue. This motion was supported by thirty-four affidavits of residents of Pinellas County. Accompanying the motion for a change of venue, were newspaper articles published in the newspapers of Clearwater, St. Petersburg and Tampa purporting to give the evidence against the defendant and his alleged confession. It was also set up by affidavits in support of the motion for change of venue that by the influence of O. J. Strickland, constable for Justice of the Peace District No. 2 of Pinellas County, the public mind had been prejudiced against the defendant. In opposition to the motion for change of venue the State introduced some twenty witnesses. These witnesses were from all walks of life in Pinellas County, and from different parts of the County. From their testimony it appears that none of them had heard any threats against the defendants and that so far as they knew, or could find out, the people were not

prejudiced against them, and in their opinion the defendants could receive a fair and impartial trial in Pinellas County. Among these witnesses were merchants, County and City officials, County Commissioners and newspaper editors. The witnesses were examined in open Court, and subjected to cross-examination before the Court, on the 10th day of November, 1930. After hearing the evidence the Court denied the motion of the defendants for a change of venue.

This Court has held that an application for a change of venue is addressed to the sound discretion of the Court and its rulings refusing the change will not be disturbed unless it appears from the facts presented that the Court acted unfairly and was guilty of a palpable abuse of discretion. Under the decisions of this Court the matter is left largely to the discretion of the trial court. Adams vs. State, 28 Fla. 511; Singleton vs. State, 38 Fla. 297; Robertson vs. State, 64 Fla. 437; Chisolm vs. State, 74 Fla. 50; Pennington and Hand vs. State, 91 Fla. 446; Folks vs. State, 85 Fla. 238.

It does not appear that there was any palpable abuse of discretion in the refusal of the trial Court to grant the motion for change of venue.

The State moved for a severance and the motion was granted as to the defendants, Oscar Jeffcoat, Mary Jane Hall and T. Hatfield, and the defendant, Elvin E. Jeffcoat, was called for trial. Defendant's counsel moved for a continuance, which continuance was granted to the next Term of Court, and the case set for trial on December 8, 1930.

The fourth and sixth assignments of error will be considered together. These assignments of error are based on the overruling of challenges for cause of veniremen, Underwood and Allen. Venireman Underwood testified that he was a boat mechanic; that he had read excerpts from the newspapers; that he had formed no opinion and

felt that he was fair and impartial; that he did not know the defendant, in fact, that he did no know whether he was white or black; that if he believed the accused innocent, or had reasonable doubt as to his guilt, he would vote to acquit him; that he did not remember whether the paper stated that the alleged confession was signed by the defendant Elvin E. Jeffcoat, or not. The venireman later testified that he had an opinion of the guilt of the accused, insofar as the newspapers were concerned, but stated that he did not know whether the newspaper accounts were true or not, and when re-examined he testified he knew every defendant was presumed to be innocent and the State would have to produce competent evidence before he would convict the defendant. During his examination the venireman seemed to become confused and failed to understand the questions propounded to him by defendant's counsel, but from a reading of his entire examination, it appears that what opinion, if any, he had formed, was gained solely from reading excerpts from the newspapers. He had never discussed the case with any one, and had not heard it discussed. This venireman was challenged for cause and the challenge denied. Later he was challenged peremptorily and, therefore, did not serve as a juror in the trial.

Venireman Allen testified that he knew nothing about the case, did not know the defendant and was not conscious of any bias or prejudice; that if he believed defendant innocent or had reasonable doubt of his guilt, he would vote to acquit him. On being questioned by attorney for the defendant, he testified he had read the newspapers and after reading them, he felt the party was guilty, but that the testimony would have to show the accused guilty before he would vote to convict him; that he was not prejudiced and could try the case as fairly and impartially as if he had never seen anything in the newspapers; that while he felt the accused was guilty from

the newspaper account, yet he would go by the testimony adduced from the witness stand and require the State to prove beyond a reasonable doubt that the defendant was guilty before he would convict him; that he had an absolutely open mind and that he could give the defendant the same fair and impartial trial as if he had never read the newspapers at all. The venireman was challenged for cause, which was denied, and served as a juror in the trial.

"The fixedness or strength of an existing opinion is the essential test of a juror's competency, when his competency is challenged upon that ground, and the Court should look specially to such state of mind in passing upon the question of competency. If the juror's opinion is not fixed and settled, and he is not warped by prejudice, but the opinion entertained by him is only such as would naturally spring from public rumor or newspaper reports, and his mind is open to the impressions it may receive from the evidence so that such opinion will readily yield to the evidence and the law, he is competent." Blackwell vs. State, 132 Southern 468.

Taking the examination of these veniremen as a whole and testing their competency by the rule above stated, there is no such showing of bias, prejudice or of a definite or fixed opinion as to the guilt or innocence of the defendant as to warrant a reversal of the action of the trial judge in holding the veniremen competent. The trial judge had the opportunity of personally observing the veniremen and their demeanor and manner of answering questions propounded to them. He also had the opportunity of observing the manner of counsel in propounding the questions. Clearly neither of the veniremen held a fixed opinion, but only an opinion formed from reading newspapers. Neither of the veniremen knew the defendant, nor had they discussed the case with anyone. Both veniremen testified that such opinions as they had formed from reading the newspapers would yield readily to the

evidence. There was no error in overruling the challenge for cause of these veniremen. Marlowe vs. State, 49 Fla. 7; Lamb vs. State, 90 Fla. 844; Blackwell vs. State, 132 Southern 468.

The 8th, 9th, 10th and 11th assignments of error will be considered together, as all of these assignments of error are based upon the overruling of objections to the testimony of the witness, O. J. Strickland, and the over-ruling of defendant's motion to strike the testimony of the witness, Strickland. The witness, O. J. Strickland, testified that he was Constable of the Justice of the Peace District No. 2, of Pinellas County; that on the night of October 14th, the night the homicide is alleged to have been committed, he went to the Plant Hospital at Clearwater and found there the deceased in a dying condition; that the defendant, Jeffcoat, came to the hospital and asked if anyone had brought a woman into the hospital, and the witness told him that his (Jeffcoat's) wife had been brought to the hospital and that witness thereupon arrested the defendant and took him to the City jail; that the defendant, Jeffcoat, had driven to the hospital in his own automobile, and that after witness arrested Jeffcoat at the hospital, he told two gentlemen, whom he knew, to take the defendant's automobile to the jail; that when the car arrived at the jail, witness examined it and found blood stains and what appeared to be human brains on the car. The witness further testified that he did not have to search the car to find the blood stains and brains but he could stand quite a distance off and see them from the outside of the car. Under the statutes of this State it is the duty of public officers to arrest without warrant any person whom such officer has reasonable ground to believe, and does believe, has committed a felony. The evidence shows that officer Strickland had reasonable ground to believe that the defendant had committed a felony. He had heard of previous trouble that Jeffcoat

had had with his wife. Under these circumstances it seems that the arrest without a warrant was lawful. Osborne vs. State, 87 Florida, 418.

As to the so-called search of the automobile, it is apparent from a reading of the evidence that it was unnecessary to make a search; that the defendant drove to the hospital in the automobile, admitted it was his car, admitted that he had been driving in it all afternoon and said no one else had driven it, and the officer testified that one could stand at some distance and see the blood stains on the automobile. Nothing was removed from the car, and used in evidence against the defendant, and the testimony of officer Strickland merely told of blood stains on the automobile. It would certainly be a strange construction of the search and seizure laws to say that this was a search in any legal sense. Even though it were a search, the officer would have been justified in making such a search because the law authorizes such reasonable search and seizure, as is properly incident to the arrest, but this search, if it can be called such, was not inappropriate to the reasonable requirements for making effective a lawful arrest. Haile vs. Gardner, 82 Fla. 355. Agnello v. United States (C. C. A.) 290 Fed. 671; 1 Warton's Crim. Proc. (10th Ed.) Sec. 34; State vs. Quinn, 111 S. C. 174, 97 S. E. 62, 3 A. L. R. 1500. There was no error in admission of testimony as to the condition of defendant's car.

Later, witness Strickland went to the home of the defendant and made a search of his home, but no evidence was introduced as the result of such search. Witness only testified to the fact that he found defendant's two children sleeping in the house, and some water in a wash basin, which apparently had been recently used. Witness did not have a search warrant to search defendant's home. While it may not have been proper to have searched the defendant's house without a search warrant, nothing

was there found, and nothing was offered in evidence that was taken from the house or that could have prejudiced the defendant, and if error was committed in receiving this evidence it was harmless and would constitute no reversible error because there is ample evidence to sustain the verdict without this evidence.

The 13th, 14th and 15th assignments of error are based upon a search of the home of Oscar Jeffcoat, an uncle of the defendant. It appears from the evidence that the defendant, while in jail, sent a note to his uncle, Oscar Jeffcoat, by a man named T. Hatfield, who had been in jail at the same time. The witness, Strickland, intercepted this note. Hatfield and Oscar Jeffcoat went to the home of the defendant and dug up something in the yard of defendant's home. The officers were notified of what was taking place and they proceeded to the house of Oscar Jeffcoat and there found the defendants afterwards indicted as accessories after the fact, Oscar Jeffcoat, T. Hatfield and Mary Jane Hall, in possession of a lumber jacket. The three persons were arrested and the lumber jacket taken as evidence incident to a lawful arrest, and without any opposition whatsoever. This lumber jacket had what appeared to be blood on it and was admitted by the defendant Jeffcoat to be his property. It was introduced in evidence over the objection of the defendant. The evidence shows that the officer arresting Oscar Jeffcoat, T. Hatfield and Mary Jane Hall had reason to believe that these persons were accessories after the fact to the murder of Fannie Jeffcoat, and arrested them without a warrant and the lumber jacket was found in the possession of these persons when they were arrested. Under the law of this State, sheriffs, police officers and other executive officers are not only authorized, but it is made their duty to arrest and take in custody without warrant any person whom such officer has reasonable ground to believe and does believe has committed a felony. Osborne vs. State,

87 Fla. 418. The evidence shows that the jacket was dug up by Oscar Jeffcoat, the uncle of the defendant, and T. Hatfield, on defendant's property. At the most it could only be said that Oscar Jeffcoat and T. Hatfield were trespassers on the property of defendant. Neither of them were officers of the law. There was no evidence that Oscar Jeffcoat and T. Hatfield made any search of the defendant's premises, the evidence shows that Oscar Jeffcoat and T. Hatfield merely dug up the lumber jacket on the defendant's premises. This cannot be said to be an illegal search.

The 12th, 16th and 17th assignments of error will be considered together. The witness, Strickland, testified that on the 18th day of October, 1930, the defendant made a statement to him in the presence of Sheriff Booth and Cecil Tucker; that the statement was made freely and voluntarily, without any threats, compulsion, inducement, reward or offer of reward or inducement; that the accused was warned that any confession he might make would be used against him and that after the defendant had made the confession, and it had been written down, he read it and signed it. The defendant admitted by the confession that he had taken his wife for a ride and had hit her over the head with a hammer three times; that he then returned home and for an alibi be began to inquire about his wife. It appears that the defendant had been allowed to consult with his attorney in private before making this confession and, before the confession was admitted in evidence, the jury was excused and evidence was received by the Court as to the admissibility of the confession. From the facts disclosed by the record it appears that the confession was freely and voluntarily made and was made without any compulsion, fear or threats and without any hope of reward. Sheriff Booth was present when the confession was made and signed by the defendant, and corroborated the testimony of the witness,

Strickland, as to the confession being freely and voluntarily made. The trial Court having found the confession admissible and there being no evidence that he abused his discretion and it appearing that it was freely and voluntarily made, there was no error in its admission. Davis vs. State, 90 Florida 317; Nichols vs. State, 90 Fla. 659; Thomas vs. State, 58 Fla. 122.

The 18th assignment of error is based on the denial of defendant's motion for new trial. Included in this assignment of error are the 1st, 2nd, 3rd and 21st grounds of the motion for new trial. The 1st, 2nd and 3rd grounds of the motion for new trial question the sufficiency of the evidence. The evidence is amply sufficient to support the verdict.

The 21st ground of the motion for new trial complains that the Court erred in depriving the defendant of the closing argument to the jury. This assignment of error is not well taken.

Section 8386, Compiled General Laws of 1927 (Section 6081 R. G. S., 1920) provides:

"In all criminal cases where the defendant offers no testimony in his own behalf, except his own, the attorney or attorneys for the defendant shall have the closing argument."

And Section 8385, Compiled General Laws of 1927 (Section 6080, R. G. S., 1920) contains the following provision:

"* * * And a defendant offering no testimony shall be entitled to the concluding argument before the jury."

The defendant did not make a statement to the jury, nor was any evidence offered before the jury in his behalf. After the State Attorney had argued, the defendant's attorney asked that he be allowed to reply to the argument of the State Attorney. The trial Court granted counsel for defendant's request, and he thereupon replied to the argument of the State Attorney. This was the last and concluding argument. So the record shows conclu-

sively that the defendant's counsel did make the final and closing argument before the jury.

A careful examination of the evidence in this case with respect to the assignments directed to its sufficiency to support the verdict shows the evidence sufficient and there are no harmful errors in the record. The judgment is affirmed.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL AND BROWN, J.J., concur.

DAVIS, J., disqualified.