MONROE HASTY v. STATE.

162 So. 910.
Division A.
Opinion Filed May 6, 1935.
On Petition for Rehearing August 29, 1935.

H. B. *Hodgden* and *Scarlett & Futch,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

DAVIS, J.—In this case the plaintiff in error, Monroe Hasty, was indicted, tried and found guilty of murder in the first degree without recommendation to mercy of the Court and thereupon sentenced to death by electrocution. Upon writ of error to the judgment, the sole proposition of law advanced for argument in plaintiff in error's behalf is that the evidence was legally insufficient to support the jury's finding that the homicide was committed by the defendant with a premeditated design to effect the death of the person killed.

The evidence brought up in the bill of exceptions discloses that Mr. George Loucakis was at his store and filling station near Eldridge in Volusia County on the night of June 8, 1934; that his wife, Mrs. Helena Loucakis, was doing the usual work she did at night in connection with her husband's business, taking care of the books of the store and looking after the cash, which was her part of the job in which both were engaged in the operation of the

store; between eleven thirty and twelve o'clock on the night of June 8th (which was Friday) Mr. Loucakis, as was his custom, went to bed, leaving his wife sitting at her desk doing some kind of work; suddenly Mrs. Loucakis called out to her husband, "George, I am shot," whereupon, her husband, being aroused from his sleep by his wife's call for help, ran to her assistance; Mrs. Loucakis died the next day after removal of a .25-caliber automatic pistol bullet from her body.

Investigations made by officers disclosed that Mrs. Loucakis had been shot by a pistol evidently fired from a point close to a screened window which commanded a view of the place where Mrs. Loucakis was sitting when wounded. There were powder burns around the bullet hole in the window screen that had been made by a small caliber weapon and there was found nearby a cigarette holder and package of cigarettes that had been dropped in the flight of the perpetrator of the shooting. Two and a half feet from the screened window was found a twenty-five caliber pistol shell that had been ejected from its weapon after being fired. In addition to this tracks led to and from the screened window from whence the shot came.

Sometime after daylight Monroe Hasty, the plaintiff in error, was arrested and charged with the crime. Between two mattresses was found a .25-caliber automatic pistol and the defendant himself identified as being his the cigarette holder and package of cigarettes found at the scene of the homicide.

In addition to a purported "confession" made in the Tampa jail and admitted in evidence, the defendant himself testified at the trial that he went to the home of Mr. and Mrs. Loucakis to steal chickens, that he carried the .25-caliber automatic pistol in his hand as he did so and that

as he was closing the chicken house door, the pistol went off, whereupon the accused ran away and upon reaching his home, hid the gun between the mattresses just before going to bed. The chicken house from which point the defendant testified the pistol was "accidentally" discharged by him was shown to be at least 100 feet from the place where the ejected cartridge shell was found and at the same distance from the point where the powder burns were impressed on the punctured window screen. There was expert testimony to establish the fact that a .25-caliber automatic pistol does not make powder marks and eject a fired cartridge shell 100 feet from the point of discharge when the weapon is fired.

The conclusion we draw from the evidence as a whole (and such was evidently the conclusion drawn by the jury) is that the defendant, a negro boy (who had once worked for Mr. and Mrs. Loucakis), in the middle of the nighttime, while the man of the house was in bed and the wife sitting up alone and engaged in looking after her work, surreptitiously crept up to the screened window not far from where Mrs. Loucakis was sitting, and thereupon, pressing the muzzle of his menacing weapon up against, or near the meshed wire, took deliberate aim and fired with deadly accuracy the fatal shot which mortally wounded Mrs. Loucakis as she sat at her desk doing her accustomed work in her husband's place of business.*

The unlawful killing of a human being, when perpe-

---

*A dying statement made by Mrs. Loucakis after she was shot and just before she died confirms the conclusion stated. Mrs. Loucakis' version of the shooting was as follows: "I went to close the living room and somebody shot me from in back the house. They must have been standing by the faucet. I saw the fire. Look if there's a hole in the screen. Geo. was asleep and didn't hear it. I had to call him several times."

trated from a premeditated design to effect the death of the person killed or any human being, or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery or burglary, is murder in the first degree and is punishable by death. Section 7137 C. G. L., 5035 R. G. S., Chapter 8470, Acts 1921, Laws of Florida.

In order that a person may be convicted of murder in the first degree, he must have acted from or in pursuance of a premeditated design to effect the death, as alleged in the indictment; proof of a mere intent to kill would not be sufficient. Such design must precede the killing by some appreciable space of time, but the time need not be long. It must be sufficient for some reflection or deliberation upon the matter, for choice to kill or not to kill, resulting in the formation of a definite purpose to kill. That such purpose was formed must be determined by the jury from all the circumstances of the case, but indication of it need not be given express utterance to be at the time of the killing, or at any other time, but may be inferred by the jury from all of the facts and circumstances of the case, though no expression of malice or of such premeditated design may ever have been given utterance to by the accused at any time, either before or after firing the fatal shot or inflicting the mortal wound. Roberson v. State, 45 Fla. 94, 34 Sou. Rep. 294; Barnhill v. State, 56 Fla. 16, 48 Sou. Rep. 251.

The natural and necessary inference is that an inexcusable and cruel act, such as the act of an intruder in shooting to death an unarmed woman peacefully sitting in her husband's place of business late at night, attending to her own affairs and unaware of the presence of any menace to her safety from an intruder's nearby presence armed with a deadly weapon, is an act done in pursuance of a willful, wrongful and injurious purpose previously, though

perhaps suddenly formed, and premeditated sufficiently to amount to a premeditated design to kill the person fired at, where it appears that in order for the intruder to fire the fatal shot it was necessary for the killer to so deliberately and accurately aim the weapon at the time of the shooting, that its bullet would reach its mark after being fired through a mesh window screen from the darkness into a lighted room where the victim was seated. See Holland v. State, 12 Fla. 117.

So whether the defendant in this case thought Mrs. Loucakis, who appeared to be alone because her husband had earlier that night gone to bed, would be an easy victim of an attempt at robbery or burglary, if she were shot while near the place in her husband's store that she usually checked up the day's cash, or whether the shot that was fired was so fired deliberately through an inexcusable impulse on defendant's part to kill, it is certain that proof of premeditated design to effect the death of Mrs. Loucakis is lawfully deducible from the circumstances of the shooting and its effect in bringing about the death of Mrs. Loucakis, the person shot at and thus slain.

The judgment is affirmed.

WHITFIELD, C. J., and BROWN, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

## ON PETITION FOR REHEARING.

DAVIS, J.—In the opinion of the Court filed herein the statement is made that:

"The conclusion we draw from the evidence as a whole (and such was evidently the conclusion drawn by the jury) is that the defendant, a negro boy (who had once worked for Mr. and Mrs. Loucakis), in the middle of the night-

time, while the man of the house was in bed and the wife sitting up alone and engaged in looking after her work, surreptitiously crept up to the screened window not far from where Mrs. Loucakis was sitting, and thereupon, pressing the muzzle of his menacing weapon up against, or near the meshed wire, took deliberate aim and fired with deadly accuracy the fatal shot which mortally wounded Mrs Loucakis as she sat at her desk doing her accustomed work in her husband's place of business."

The impression conveyed by the statement as made is no doubt inaccurate insofar as it conveys the suggestion that the evidence shows that Mrs. Helena Loucakis was seated at her work at the time she was shot. The conclusion, as stated, was drawn in large part from the testimony of Mr. Loucakis that he left his wife "sitting there at the desk doing some kind of work" at the time he retired, and that it "was her part of the job" to "check up the accounts" every night, count the cash and put it away in a safe place, a task she had remained up to perform on the occasion of her being killed.

In justice to the plaintiff in error the challenged paragraph of our opinion of May 6, 1935, as above quoted, should be revised to read as follows:

"The conclusion that we draw from the evidence as a whole (which was evidently the conclusion drawn by the jury) is that Monroe Hasty, a negro boy who had once worked for Mr. and Mrs. Loucakis and who bore an excellent reputation up until the charge of murder made against him in this case, in the middle of the night-time, while Mr. Loucakis, the man of the house, was in bed, and his wife, Helena Loucakis, was sitting up alone for the purpose of attending to her duties in closing up the place for the night, surreptitiously crept up to the screened win-

dow of the room wherein Mrs. Loucakis had been sitting checking up the day's accounts and counting the cash preparatory to her retirement for the evening, and thereupon, pressing the muzzle of his pistol up against, or near the meshed wire screen near the faucet back of the house, and taking deliberate aim, proceeded to fire the shot that mortally wounded Mrs. Loucakis as she went to close the living room on the night of the homicide."

So whether the deceased was actually sitting down or not at the time when she was shot, there is substantial evidence to support the conclusion that Monroe Hasty, the accused negro boy whose life is at stake on this appeal, did unlawfully intrude himself upon the private premises of Mr. and Mrs. Loucakis late at night, at an hour he obviously should not have been there, and that he deliberately shot to death an unarmed housewife who was customarily engaged at that hour in counting cash likely to excite the cupidity of an intruder such as he if he viewed the same, and that the defendant's act of shooting Mrs. Loucakis, assuming that he fired his pistol close to the screen as testified by the State's witnesses (although denied by him), evinced a willful, wrongful and injurious purpose previously, though perhaps suddenly, formed, and premeditated sufficiently to amount to a premeditated design to murder the person fired at. Not only was the pistol fired with uncanny accuracy for one unfamiliar with such weapons (as Monroe Hasty pretended to be), but there is convincing circumstantial evidence attested by the condition of the wire screen as to the powder marks, that completely belies the version of the shooting as related by the defendant.

Reluctant as courts usually are to countenance judgments of condemnation to capital punishment on circum-

stantial evidence that is at all doubtful in its import of guilt, we have found no occasion in the present case, even after a most careful restudy of the evidence and exhibits in the case, to alter the conclusion we have heretofore expressed in our judgment of affirmance.

The opinion hereinbefore filed on May 6, 1935, will stand corrected and revised in the particulars hereinbefore specified, but otherwise the same is adhered to.

Rehearing denied.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.

BROWN, J. (concurring).—While the circumstances in evidence are such that we would not be justified in setting aside the verdict, the case is unusual in one respect which has some bearing on the question of premeditation. The husband of the deceased woman testified that this young negro had been working around his place at different times over a period of several months and had done some work for him and his wife on the very day preceding the night of the killing, and that up to that time he had considered the defendant an "excellent" negro boy. There is no evidence that either Mr. Loucakis or his wife had ever had any trouble with the defendant. Probably if this young negro had not bought his first pistol just a few days before this dreadful night, and had become obsessed with the idea of using it, this murder would never have been committed; which suggests the thought that if the indiscriminate sale of deadly weapons had been prevented by law Mrs. Loucakis would be alive today. Armed with his pistol, the defendant was bold enough, according to his own evidence, to go on the premises to steal a chicken. The jury might have inferred that he then saw Mrs. Loucakis counting up the cash and crept close to the screen door with the idea

of robbery, and that when Mrs. Loucakis suddenly went to close the living room door, he thought he had been discovered and shot her. But this theory would hardly support the charge of premeditated murder unless he intended to kill if resistance was offered, or discovery made.