CLARENCE PARKER v. STATE.

194 So. 484
En Banc
Opinion Filed March 8, 1940

*H. H. McDonald,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, *Thomas J. Ellis,* Assistant Attorney General, and *J. C. Adkins,* for Defendant in Error.

CHAPMAN, J.—Plaintiff in error was indicted by a grand jury of Gilchrist County, Florida, on September 26, 1938, for the murder of J. T. Owens on the 3rd day of July, 1938, and upon arraignment entered a plea of not guilty to a crime charged in the indictment. He was placed upon trial and by a jury of Gilchrist County convicted of crime of murder in the first degree, without recommendation to mercy, and was by the trial court sentenced to death by electrocution, and from this judgment a writ of error has been perfected

to this Court. It is contended here that the judgment of conviction and the death sentence should be reversed by this Court, because the lower court committed reversible error, viz.: (a) in entering an order overruling and denying plaintiff in error's motion for a change of venue from Gilchrist County, where the crime was committed, to some other county of the Circuit as prescribed by law; (b) that the lower court erred in making and entering an order overruling and denying the motion of the plaintiff in error for a new trial, which called into question the sufficiency of the evidence adduced on the part of the State to sustain the verdict and judgment of conviction.

The record shows that counsel for plaintiff in error seasonably presented a motion for a change of venue in which he certified that the application for a change of venue was made in good faith. The form of the motion is not questioned and the only evidence offered in support thereof was the affidavit of the plaintiff in error, which was, viz.:

"Before me, the undersigned authority, personally appeared Clarence Parker, who, after being by me first sworn says that he is the defendant in the above cause and that he makes upon oath this his application for a change of venue from Gilchrist County to some adjoining county within the Eighth Circuit and says that he fears he will not receive a fair trial in the above styled cause where said cause is now pending on account of applicant being so odious to the inhabitants of Gilchrist County that he could not receive a fair trial.

"Applicant further says that on the day that he was arrested he was immediately carried from Gilchrist County to Alachua County and incarcerated in the Alachua County jail; that some members of the party or posse arresting him made remarks that he should be strung up or burned alive.

Affiant further says that he had not lived in Gilchrist County very long prior to the alleged commission of the homicide for which he is charged and that he has no friends nor does he know any one in said county of Gilchrist that would sign supporting affidavits to this his application for a change of venue.

"Affiant further says that he was kept in the Alachua County Jail from the date of his arrest until the 26th day of September, 1938, where he was transported to Gilchrist County by the Sheriff of Gilchrist County and was in open court arraigned upon an indictment for murder in the first degree to which indictment he entered a plea of not guilty. Affiant further says that after his arraignment the State Attorney announced to the judge of said circuit court that he desired that the defendant be brought back to Gainesville and placed in the Alachua County jail because he, the State Attorney, did not feel that the defendant would be safe in the Gilchrist County jail."

The Honorable J. C. Adkins, State attorney, presented, filed and requested the trial court to consider in opposition to the motion of plaintiff in error for a change of venue an affidavit on the part of the State attorney, which is, viz.:

"Personally came before me J. C. Adkins, who, being by me first duly sworn, deposes and says that he is State Attorney for the Eighth Judicial Circuit of Florida and was the State attorney at the time of the arraignment of the defendant, Clarence Parker, in this case, to which indictment, upon arraignment, the defendant entered a plea of not guilty. Affiant further says that after the arraignment and the entry of plea by the defendant that he did request the court to instruct the sheriff to carry the defendant to the jail in Alachua County, Florida, because he, the State attorney, this affiant, did believe at that time, and does not

now believe, that the common jail of Gilchrist County is in such condition to safely hold any man incarcerated therein, charged with crime, who desires to escape therefrom. There have been at least two escapes from the jail and it is generally considered that you can take a spoon handle, or some similar instrument, and unlock the jail and escape therefrom; and the reason for the request to transfer the defendant back to the Alachua County Jail was that he could be kept so that he would be here for trial at this time."

The trial court, on the state of the record, *supra,* without any effort on his part to obtain a jury to try the issues presented, made and entered an order overruling the said motion. We have carefully considered the record and fail to find the parties hereto experienced difficulties in obtaining a fair and impartial jury in Gilchrist County because of the odiousness of the plaintiff in error to the inhabitants of Gilchrist County, Florida. It is true that the statement of the plaintiff in error as shown by his affidavit, presents some very serious statements, and if these statements reflected the true sentiment in Gilchrist County then existing at the time he was placed on trial, we would then entertain some apprehension as to whether or not justice was properly administered in the lower court. The trial court was of the opinion that the facts disclosed by the affidavit of plaintiff in error were without merit and no doubt if these statements were true in point of fact, they would have been reflected in the sentiment of those called upon and examined for jury duty when the case was being tried in the lower court.

It is the established law of Florida that an individual charged with a crime has the constitutional right to be tried in the county where the crime was committed. See Section

11 of the Declaration of Rights of the Constitution of Florida; Ashley v. State, 72 Fla. 137, 72 So. 647; O'Berry v. State, 47 Fla. 75, 36 So. 440.

Section 4337 C. G. L., prescribed the procedure and the grounds for a change of venue in civil and criminal cases. It is true that under the laws of Florida a person charged with a crime is entitled to be tried by an impartial jury and when it shall appear to the trial judge that a fair and impartial trial cannot be had in the county where the offense was committed, he should direct that the accused be tried in another county. We do not think or believe that the showing of the plaintiff in error was sufficient, so the ruling of the trial court in denying the motion for a change of venue was not error. See Shiver v. State, 41 Fla. 630, 27 So. 36; Robertson v. State, 64 Fla. 437, 60 So. 118; Leslie v. State, 35 Fla. 171, 17 So. 555; Shepherd v. State, 36 Fla. 374, 18 So. 773; Jeffcoat v. State, 103 Fla. 466, 138 So. 385; Starr v. State, 5 Kila. Cr. 440, 115 Pac. 356; Deeds v. Deeds, 108 Kan. 770, 196 Pac. 1109; Haddock v. State, 141 Fla. 132, 192 So. 802; Roberts v. State, 72 Fla. 132, 72 So. 649; Landrum v. State, 79 Fla. 189, 84 So. 535; Chisolm v. State, 74 Fla. 50, 76 So. 329; Bauer v. State, 117 Fla. 674, 158 So. 168; Jeffcoat v. State, 103 Fla. 466, 138 So. 385; Hysler v. State, 132 Fla. 209, 181 So. 354.

The next question presented is the sufficiency of the evidence adduced on the part of the State to sustain the verdict as found by the jury. This question is squarely raised by the motion of the plaintiff in error for a new trial which was denied by an order of the trial court with exceptions being noted by the court at the request of counsel for the defendant below. The State offered several eye witnesses to the shooting of Mr. Owens by the defendant.

The defendant admitted the shooting when on the stand as a witness in his own behalf and justified his action at the time on the theory that he was acting in self defense in that the deceased was attempting to kill him. When arrested defendant stated that he had received a gun-shot wound on the leg and hip in the fight inflicted by the deceased, but upon examination of his person by the arresting parties no such wounds could be found. The defendant exhibited an alleged gun-shot wound to the jury at the time of the trial, stating that it was inflicted by the deceased at the time he killed the deceased. The wound was on the third finger of his left hand, but the arresting parties failed to observe the wound when the defendant below was taken into custody.

It is contended by counsel for plaintiff in error that the evidence failed to show a premeditated design or an intention to kill the deceased. The defendant, a colored man, was a stranger at Tyler, in Gilchrist County, when the crime was committed, but lived a few miles therefrom, and on the day preceding the fatal altercation went to Tyler to see his wife, who had left him and was then living at Tyler. He located his wife at the home of a colored man and upon seeing the plaintiff in error, the wife ran from the home where she was stopping to the home of the deceased, Mr. Owens. The defendant followed his wife and the testimony showed that he fired some three or four shots at her prior to the time she reached Mr. Owens' home where she ran for protection. Mr. Owens ordered the defendant to leave his home where he had come to get his wife. The defendant left and had traveled about 200 yards when the deceased left his home in a car and called the defendant, who responded to the call of the deceased, and when the defendant approached the deceased sitting in his car, he began firing and continued firing until he had killed him.

This Court, by an unbroken line of decisions, has held that the question of intent and premeditation is a question of fact to be determined by the jury under appropriate instructions. See Savage v. State, 18 Fla. 909; Lovett v. State, 30 Fla. 142, 11 So. 550; Buchanan v. State, 95 Fla. 301, 116 So. 275; Hasty v. State, 120 Fla. 269, 162 So. 910; Robinson v. State, 69 Fla. 521, 68 So. 649; Padgett v. State, 121 Fla. 42, 163 So. 291.

In considering the probative force and weight of the testimony on a motion for a new trial, the guiding principle for an appellate court is not what it may think the jury ought to have done nor what such court may think it would have done had it been sitting as a jury in the case, but whether as reasonable men the jury could have found such a verdict upon the evidence. If there is sufficient evidence to sustain the verdict, the action of the lower court in denying a motion for a new trial will not be disturbed. It is the duty of counsel for plaintiff in error to show on appeal that the testimony was not sufficient to sustain the verdict or that the jury must have been improperly influenced to render the verdict. See Lindsey v. State, 53 Fla. 56, 43 So. 87; Stanley v. State, 93 Fla. 372, 112 So. 73; Howell v. State, 102 Fla. 612, 136 So. 456, 139 So. 187.

We are unable to find as a result of a careful consideration of all the evidence, the slightest degree of testimony offered in the trial of the case that could possibly be construed or interpreted as a justification on the part of the defendant below to so brutally and inhumanly have fired and continued firing the several shots resulting in the death of Mr. Owens. The law fixes a penalty for such crimes and in the case at bar it is the heaviest and most expensive known to humanity, the life of the slayer. The law demands that we sustain the judgment.

There is no error in the record and the judgment appealed from is hereby affirmed.

TERRELL, C. J., WHITFIELD and THOMAS, J. J., concur.

BROWN and BUFORD, J. J., concur specially.

BROWN, J. (concurring specially).—The application for change of venue did not comply with Section 4337 C. G. L.; Among other things it was not supported by affidavits of "at least two reputable citizens of the county." Furthermore, there was no difficulty in securing a qualified jury. No peremptory challenges were used by the defendant.

As is usually the case, there were some discrepancies in the testimony of the witnesses for the State, and a sharp conflict between the testimony of the defendant and the State's witnesses. But it was "a jury case," and the trial judge properly submitted the case to the jury. As there was sufficient evidence to sustain the verdict, the motion for new trial was properly overruled, and the judgment of conviction should be affirmed.

BUFORD, J., concurs.