FRAND LANDRUM, JOE LANDRUM AND JOE LICHENSTINE, *Plaintiffs in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

## Opinion Filed March 1, 1920.

1. Section 1576, General Statutes, does not designate the particular places at which the notices of the time and place of the drawing of jurors shall be posted, but only requires the posting of such notices shall be in three public places in the count.

2. Pleas in abatement setting up mere irregularities in the selection of jurors should be drawn with the greatest precision and must be certain to every intent. They must leave nothing to be supposed by intendment and no supposable special answer unobviated.

3. A plea stating that the notices were posted in certain places all in Lake City without alleging that said places were *not public* places is defective and the court committed no error in sustaining a demurrer to such plea.

4.  Motion for change of venue on account of the hostility of the
    inhabitants of the county to the defendant is addressed
    to the sound judicial discretion of the trial judge and this
    court will not reverse his decision upon such motion unless
    there is made to appear an abuse of such discretion.

5.  Where the judge, who passed upon the motion, was pres-
    ent, saw the people assemble, heard the evidence upon the
    motion and no evidence of great hostility appearing upon the
    examination of the jurors as to their qualifications and the
    jurors recommending·mercy, when in their power to with-
    hold such recommendation, ·this court cannot say there was
    an abuse of the discretion vested in the trial judge.

6.  The only object in granting a continuance in a criminal case
    on account of the absence of witnesses is to give the de-
    fendant time to secure the attendance of such witnesses, or
    take their deposition, and when sufficient time is allowed
    for this purpose, it may be until the next term, or at any
    special term, or any day during the same term. ·

7.  Defendants in criminal cases applying for continuance on
    the ground of the absence of witnesses must in all cases
    show diligence in attempting to procure the attendance of
    such witnesses, but where a second, or subsequent applica-
    tion for continuance is made on the ground of the absence
    of the same witnesses, extraordinary diligence must be shown
    to have been exercised in attempting to procure the evidence.

8.  A map, diagram or picture, whether made by the hand of
    man or by photograph, identified as a correct representa-
    tion of physical objects, about which testimony is offered
    is admissible in evidence for the use of witnesses in explain-
    ing his evidence and to enable the jury to better understand
    the testimony.

9.  Under the statute, Chapter 6228, Acts of 1911, giving the de-
    fendant the right to the concluding argument when he in-
    troduces no testimony except his own, the defendant has the
    right to the last argument, but when there are two or more

counsel the court may direct the order of argument, provided he gives the defendant the final argument by one of his counsel.

10. It would be well if prosecuting officers would confine their argument strictly to the evidence and logical inferences drawn therefrom and refrain from the use of language that only tends to excite the prejudice of the jury against the defendant.

11. If prosecuting counsel in criminal cases, make material statements outside of the evidence which are likely to do the accused injury, it should be deemed an abuse of discretion and cause for reversal, but when the statement is a general one and of a character not likely to prejudice the cause of the accused in the minds of honest men of fair intelligence, the failure of the court to check counsel should not be deemed such an abuse of discretion as to require a reversal.

A Writ of Error to the Circuit Court for Columbia County; M. F. Horne, Judge.

Judgment affirmed.

*Cone & Chapman,* for Pliantiffs in Error;

*Van C. Swearingen,* Attorney General, and *D. Stuart Gillis,* Assistant, for the State.

WILLS, Circuit Judge.—Frank and Joe Landrum, Joe Lichenstine and Tim Hales were jointly indicted for murder. A severance was granted as to Tim Hales and the other three defendants placed on trial and verdict of guilty of murder in the first degree with a recommendation to mercy reached.

On April 28, 1919, the grand jury presented the indictment charging these defendants, together with Tim Hales, with the murder of Annie Koon, and on May 1st, the defendants filed their pleas in abatement, the substance of said pleas being that the notice required by the statute for the drawing of the jurors was not published at three different places, but were posted in three places within the corporate limits of the city of Lake City. To these pleas the State demurred and the Court sustained the demurrer and this constitutes the first assignment of error.

There had been no jury drawn by the Circuit Judge at the former term, and the jury for the term of court at which the indictment was presented was drawn under Section 1576, General Statutes, 1906, as follows:

"Whenever from any cause no jurors shall have been drawn as provided in the foregoing section, then it shall be the duty of the clerk, at least fifteen days before the sitting of any regular or special term of the circuit court at which a jury shall be required, in the presence of the county judge, or in his absence, in the presence of a justice of the peace, and the sheriff or a deputy sheriff of the county, to proceed to draw from the box the names of thirty-six (36) persons to serve as jurors at the next term of the court, and to issue a venire commanding the sheriff to summons the persons so drawn as provided in the preceding sections. The drawing of such jurors shall be publicly made in the court house, and the time and place thereof shall be advertised ten (10) days previously by written notices posted at three (3) public places in the county, and the sheriff shall proclaim the meeting and its purpose at the door of the court house, just prior to the drawing; Provided, That the drawing in such cases for special terms of the circuit court, or in counties where

there are county criminal courts, shall be for twelve jurors only, to serve as petit jurors, unless the judge shall order the drawing of a sufficient number to compose a grand jury for the term."

The court will take judicial cognizance that Lake City is in Columbia County.

The statute does not specify at what places such notices must be posted, such as at court house door or any other place, but that such notices shall be advertised at three *public* places in the county; there is no allegation in the pleas that the places where such notices were posted were not public places, and in the absence of definite places at which such notices were to be placed it was left to the discretion of the officers to select the three public places and it was necessary in the pleas in abatement to allege the three places were not public places.

"Pleas in abatement setting up mere irregularities in the selection of jurors should be drawn with the greatest precision and must be certain to every intent. They must leave nothing to be supplied by intendment and no supposable special answer unobviated. Colson v. State, 51 Fla. 19, 40 South. Rep. 183; citing Davis v. State, 47 Fla. 26, 36 South. Rep. 170; Kelly v. State, 44 Fla. 441, 33 South. 235; Taylor v. State, 49 Fla. 69, 38 South. Rep. 380. There was no error in sustaining the demurrer."

On May 1st the defendants were arraigned and each pleaded not guilty and on motion of the State a severance was granted as to Tim Hales.

On the same day Frank Landrum, Joe Landrum and Joe Lichenstine filed their motion for change of venue on the ground that the feeling against them in Columbia County was such that they could not receive a fair trial in

such county.   This motion was supported by their affidavit and the affidavits of ten citizens of Columbia County with clippings from newspapers in Lake City and Jacksonville; the State produced the affidavits of twenty citizens of Columbia County who swore they were acquainted with the sentiment of the people of Columbia County and that a fair and impartial jury could be obtained there.  The trial judge overruled the motion for change of venue and this is made the basis of the second assignment of error.

"An accused is entitled to be tried by an impartial jury and when it is made to appear to the trial judge that a fair and impartial trial cannot be had in the county where the offense was committed, he should direct that the accused be tried in another county.  This is a matter left largely in the discretion of the trial court and its rulings on such matters will not be disturbed unless it appears from the facts presented that the court acted unfairly and committed a palpable abuse of sound discretion." Singleton v. State, 38 Fla. 297, 21 South. Rep. 21.

The Judge who passed upon the motion was present, saw the people assemble when the defendants were brought to the court room, had the whole scene before him, and impressed as he was with the responsibility resting upon him in seeing that these three defendants were tried by a fair and impartial jury, and nothing appearing in the record of any hostility of any of the jurors summoned upon their examination as to their qualification as jurors and the verdict rendered finding the defendants guilty of murder in the first degree with a recommendation to mercy when without such recommendation a sentence of capital punishment would have been adjudged, under the statute, is very high evidence to the writer of

this opinion that the jury was not influenced by prejudice and passion; and the action of the judge in denying the motion for change of venue was correct.

On May 1st, 1919, the defendants made their motion for continuance on ground of absence of material witnesses and the cause was continued until June 3rd, 1919, when defendants renewed their motion for continuance on account of absence of a material witness, Leroy Williams, one of the absent witnesses on May 1st and for whom a subpoena had been issued and returned on May 1st not found in Columbia County, and the defendants on that date in their motion for continuance stated "that the location and whereabouts of the said Leroy Williams had been obtained by these defendants  *  *  *;  This absent witness  *  *  *  resides close to the line dividing Columbia and Suwannee Counties." The court on May 1st made an order allowing the defendants upon their application a commission for the taking of the testimony of the absent witnesses returnable *instanter*. The record fails to show any sufficient reason on the part of the defendant for failure to have commission issue or executed as permitted by the court.

The judge certainly by adjourning the trial from May 1st to June 3rd gave the defendant ample time by the exercise of due diligence to take the depositions or secure the attendance of witnesses.

The only object in granting a continuance on the ground of the absence of witnesses is to give the defendants time to secure the attendance of the witnesses or take their depositions and when sufficient time is allowed for this purpose, it may be until the next term or any special term or during the same term if the time is

sufficient to enable the defendants to secure the testimony of the absent witness either by their attendance or by their depositions.

"Defendants in criminal cases applying for continuances on the ground of the absence of witnesses must in all cases show diligence in procuring the attendance of such witnesses, but where a second or any subsequent application for continuance is made on the ground of the continued absence of the same witness, extraordinary diligence must be shown to have been exercised in procuring the evidence, else it is not error to refuse the application." Melbourne v. State, 51 Fla. 69, 40 South. Rep. 189.

What we have said disposes of the third, fourth, fifth, sixth, seventh and eighth assignments of error. There was no error in denying the motion.

There is no merit in the tenth assignment of error. Plaintiffs in error founded this assignment of error upon a motion to quash the venire of petit jurors for June 3rd because there was no order for a special or adjourned term. There is no contention that the court was not properly organized at its regular term or session, except as contended in the first assignment of error that there was no proper grand jury, which we have decided adversely, when the time was set for the trial and it appears that the judge set the case for trial at the then existing term —only continued it to a day in that term. The order was in words and figures as follows;

"On May 2nd, 1919, court convened in the case of State of Florida vs. Frank Landrum, Joe Landrum and Joe Lichenstine. Murder in the first degree.

"The defendants' motion for a continuance was resumed, and which motions of the defendants was traversed by the State. The State produced witnesses on

the stand and the court heard their evidence and upon consideration after hearing the evidence and ordered the said case be passed until the third week of the present term and it was ordered that the defendants may have upon their application therefor a commission for the taking of evidence of each of the absent witnesses named, returnable instanter and thereupon announced that the third week of the present term would be held on Monday, June 2nd, 1919."

This order shows plainly the judge did not intend to call a special or adjourned term, but simply to set a day for the trial.

Circuit Courts in this State are not required to sit in continuous session, but may adjourn during the term from time to time as convenience may render proper.

There was no error in permitting the witness to draw a diagram to illustrate or explain his testimony; it did not go to the jury as independent testimony, but was only used to explain the testimony of witness. The record shows that the State did not ask witness to draw a map, but a diagram. Question by the State Attorney. "Sheriff could you draw a diagram so as to show the jury the approximate location?"

When the drawing was introduced it was a diagram, not a map. "The diagram is offered in evidence by the State."

It is true that counsel spoke of the drawing as a plat or map, but the State introduced it as a diagram, and there was no error.

"A map, diagram or picture, whether made by the hand of man or by photography, verified as a correct representation of physical objects about which testimony

is offered, and which do not contain thereon indications of matters and things in question before the jury, and not a part of the physical objects when the map, diagram or picture was made, are admissible in evidence for the use of witnesses in explaining their evidence, and to enable the jury to better understand the case." Adams v. State, 28 Fla. 511, 10 South. Rep. 106.

The eleventh assignment of error in overruling objections to question to Hamp Hood "Tell the jury what was done." To which he replied: "That night after I came home from my work I went to bed and between midnight and day I was woke up by my dog barking and by some one calling me. When they called me my wife woke me up. and I said, who is that and they answered it was me, Joe Landrum, come to the door I want to see you a minute, come to the door I want to speak to you Hamp Woods. I sat on the side of the bed and I did not go to the door, and I said who is it, and he said it is me Joe Landrum. About that time Mr. Wiley Koon came down there and said Joe Landrum, what are you doing on my place at this hour of the night, disturbing my hands, and Mr. Lichenstine spoke about that time and said, do you know who this is, you G—d——cross s—— of a b———,if you do not get away from here I will blow your brains out. That is the expression he used. Mr. Koon did not say any more. Mr. Landrum said, is you coming out? I did not say anything and he asked me if I was coming out the second time. The car cranked up and moved away, and I went out at the back and went into the woods, and the car drove on off from my house in front of Tom Evans' house and stopped."

This answer was pertinent as showing two of the defendants in the immediate vicinity of the homicide just a short while before the act for which they stood indicted,

and if there was anything said that was not admissible or responsive to the question defendant should have moved to strike that particular portion of the answer, but we think that this part was admissible as showing the animus of one of the defendants, and even if it had been wholly inadmissible at the time, it was afterwards rendered admissible by the direct testimony of Joe Lichenstine, who testified in answer to a question, "Ever had any difficulty with them (the Koons)? A. "Not a bit in the world." Q. "All of you are on perfectly friendly terms?" A. "Just as friendly to Mr. and Mrs. Koons as it is possible for neighbors to be." ·

What we have just said disposes of the twelfth assignment of error.

The question to which the court sustained objections as set forth in the thirteenth and fourteenth assignments of error could have only been to impeach the testimony of Koon if he testified that Frank Landrum or Joe Landrum and not Joe Lichenstine shot Mrs. Annie Koon, his wife. Koon testified that Frank Landrum shot Mrs. Koon and Frank Landrum also testified that he shot Mrs. Koon on apprehension of danger to his father. So the error, if any, was rendered harmless by the testimony of Frank Landrum.

What we said as to the eleventh assignment of error applies to this assignment and this evidence was corroborative of the testimony of Koon that he was at the place of the shooting if for no other purpose. There is no merit in the objection to the question set out in the sixteenth assignment of error, as it simply fixes the time of the visit of the witness and there is nothing in the question as to who committed the homicide.

There was no error in permitting the question to be asked whether he knew Wiley Koon and the defendant, Joe Lichenstine, had a difficulty last winter. This evidence was admissible for the contradiction of the testimony of the defendant, Joe Landrum, that he and Koon were on friendly terms, and this defendant in his direct testimony admitted that he had words with Wiley Koon, but when that was over it was all over with him. Under the admitted facts in this case in the early morning hours these defendants were upon the premises of the said Koon visiting his tenants and under their contention were there on their way on a fishing trip and we think anything that would throw light upon the matter of why they were there at that unusual hour should have been permitted to have gone to the jury.

The basis of the eighteenth assignment is the sustaining by the court of the objection on the part of the State to the question asked by the defendant's counsel to W. L. Lankenship, a State witness: Q. "Right after the shooting when you got up where did you see anybody?" It was not in cross of anything brought out upon the direct examination, and could have had but one object as an attempt to show that some one else than one of these defendants killed Mrs. Koon, and the defendant, Frank Landrum, testified and was corroborated by the other defendants that he killed Mrs. Koon, and therefore the answer to the question would have been immaterial.

The next two assignments of error are based upon the admission of evidence of a gun and a bonnet found shortly afterwards at the place of the homicide. There was evidence tending to show, but denied by the defendants that the gun had been in the possession of the defendant, Joe Lichenstine, although this was denied by Joe Lich-

enstine, and one of the defendants testified that the lady who came to the car had on a bonnet and the bonnet was identified as the bonnet of Mrs. Koon. The evidence was clearly admissible.

The next contention is that the court erred in permitting the question to be asked Wiley Koon: Q. "Whose land were you on when you were shot?" The defense in this case is that of self-defense, and if this defense could avail the defendant must have been reasonably free from fault, and it would be immaterial upon whose land the homicide occurred. If the object of the question was to locate the place of the shooting it was plainly admissible for that purpose. If error was committed in allowing the question it was harmless error, especially when considered in connection wiht the charge of the court as follows: "Under the law the deceased had no right upon finding the defendant upon the private property of her husband, though without permission and at an unusual hour, to come upon them and without word or warning, kill one of them or attempt to do so, and had a homicide been committed by deceased under such circumstances, it would have been an unlawful homicide."

"Under the law, the defendants could without violating the law concerning trespass upon real property or any other law, enter upon the property of Mr. Koon and visit his tenants upon their invitation expressed or implied for any peaceable and lawful purpose, and at any time of the night or day."

We see no error in the twenty-second assignment of error, to the question propounded to the defendant, Frank Landrum, as to a certain conversation. The defendant denied having had such a conversation. The question could only have been asked for the purpose of laying

the foundation for impeachment of the witness and no attempt having been made by the State to impeach the witness by contradictory statements, if error, it was harmless.

The twenty-third assignment of error is expressly abandoned.

The twenty-fourth assignment of error is based upon the following proceedings after the closing of the testimony.

"By the Court: What arrangements about the arguments do you care for gentleman?

"By Mr. Chapman: Counsel for the defendants, Frank Landrum, Joe Landrum and Joe Lichenstine, direct the attention of the court to the record in this case wherein they have offered no further evidence than the evidence of their own, to-wit: Joe Landrum, Joe Lichenstine and Frank Landrum, and having offered no other evidence except the evidence of these defendants who are indicted in the same indictment; under and by virtue of Section 3979 of the West Publishing Company's Statute of 1914, claiming under the law, the privilege of addressing *the jury after the State* has addressed the jury; that is, R. H. Chapman and F. P. Cone, after counsel for the State have spoken. The attorney for the defendants also direct the attention of the court to the case of Heflin vs. State of Florida, 8 Florida, page 75.

"By the Court: The court will allow counsel for defendants to close the argument, but only one of the counsel for defendants will be allowed to speak after the speaking on the part of the State. Mr. Wilson may address the jury on the part of the State, and Judge Gillen will then speak for the State and Mr. Chapman may

then address the jury for the defendants, and Mr. Caldwell may conclude for the State and Mr. Cone may conclude for the defendants."

The contention of the defense is that the court should have required the counsel for the State to all have preceded the case for the State and then the two attorneys for the defense to have followed. This requires a construction of Chapter 6228, Laws of 1911, which is as follows:

"AN Act to Regulate and Prescribe the Practice of Attorneys in Criminal Cases.

*"Be It Enacted by the Legislature of the State of Florida:*

"Section 1. That from and after the passage of this Act, that in all criminal cases where the defendant offers no testimony in his own behalf, except his own, the attorney or attorneys for the defendant shall have the closing argument."

This rule prevailed at common law, that where defendant introduced no testimony, he was entitled to the concluding argument.

In the pamphlet laws 1852-3, page 116, is the following portion of a statute enacted in this State "in all cases where the defendant upon his trial introduces no testimony he shall by himself or counsel be entitled to the concluding argument before the jury."

At the time of the passage of the above statute the defendant was not a witness, but by Chapter 1816, Laws of Florida, approved June 1, 1870, was allowed to make a statement under the statute which reads, "In all criminal prosecutions the party accused shall have the right of

making a statement to the jury under oath as to the matter of his or her defense," and was not allowed to be cross-examined and the uniform practice in this State was that the making of such a statement did not deprive the defendant of the concluding argument.

By Act of the Legislature approved May 30th, 1895, the defendant was allowed at his option to become a witness. The statute reads:

"Section 2908.    Accused May · Make Himself a Witness: In all criminal prosecutions the accused may at his option be sworn as a witness in his own behalf, and shall in such case be subject to examination as other witnesses, but no accused person shall be compelled to give testimony against himself, nor shall any prosecuting attorney be permitted before the court or jury to comment on the failure of the accused to testify in his own behalf."

The enactment of this statute was construed by the trial courts as depriving the defendant of the concluding argument where he testified.

It was obviously the intention of the Legislature to allow the defendant the concluding argument where he introduced no other testimony than his own, but counsel for plaintiffs in error insist that it means in effect that all counsel for the defendants shall have the right to make concluding arguments after the counsel for the State have finished their arguments.

Our view of the statute under consideration is that it was intended that the testimony of a defendant would not preclude him from the right of concluding, or the last or final argument or summing up before the jury, and that so long as the right of the last argument, which we construe in this statute is meant by the word "concluding" his rights under the statute are preserved.

Where there are two or more counsel the order in which they are to speak is determined by the court. Wharton's Crim. Proc. Vol. 3, Sec. 1512.

The assignments of error from twenty-five to thirty-six inclusive are based on the refusal of the court to give certain charges. We have carefully considered the refused charges and so much of said requested charges as correctly stated the law were covered and included in substance given by the court in its charge, and the charges requested as modified.

"It is not error to refuse to give instructions that have already been given substantially, though couched in different language." Higginbotham v. State, 42 Fla. 573, 29 South. Rep. 410.

Counsel complain of the language of one of the prosecuting attorneys saying, "You who have good wives, good mothers and they are good women like Mrs. Koon was, how can you have sympathy for such a crime?"

It might have been the purpose of this remark to prevent the jury from sympathy from recommending mercy to the defendants, which they did so even if error was committed by the court in not instructing the jury not to consider the language, the verdict shows it was harmless.

Defendants' counsel argue that the court erred in not instructing the jury not to consider the following language of the same attorney: "With a half dozen men like they have on the Lichenstine place the defendants could have brought them here and identified this gun and shown that it was not Lichentine's."

The State had produced in evidence the gun testified to have been found shortly after at the place of the homicide, and evidence tending to show that the gun had formerly been the property of Joe Lichenstine. The defendant, Joe Lichenstine, on the stand testified that this was not his gun and upon being handed another gun by his counsel stated that was his gun. He also testified in answer to the State Attorney that his family consisted of his wife, son and his wife, who resided with some servants on his place; and that there is hardly a man on his place who had not shot his gun, and that his family knows it. We can see no prejudicial error in the above remarks in view of the testimony of the defendants that there were at his place, men who had shot his gun. People who knew his gun could testify as to his gun.

The next assignment of error is "The court erred in permitting Stafford Caldwell, State Attorney, while addressing the jury to use the following language: 'The said defendants, meaning Joe Landrum, Joe Lichenstine and Frank Landrum, were assasssins."

It is difficult if not impossible for an appellate court with a single sentence not knowing in what connection it was used to intelligently pass upon it. Counsel in their argument may comment upon the evidence and draw any legitimate inferences therefrom. The State Attorney at the time the language was used was probably viewing the evidence produced by the State and expressing his conclusions formed from such evidence, and it was no such gross abuse as to constitute error, or at least reversible error.

It would be well if prosecuting officers would confine their argument strictly to the evidence and logical inferences drawn therefrom and refrain from the use of the

language that only tends to excite the prejudice of the jury against the defendant.

In Combs v. State, 75 Ind. 221, the court said: "To rigidly require counsel to confine themselves directly to the evidence would be a delicate task, both for the trial and the appellate courts, and it is far better to commit something to the discretion of the trial court than to attempt to lay down or enforce a general rule defining the precise limits of the argument. If counsel make material statements outside of the evidence, which are likely to do the accused injury, it should be deemed an abuse of discretion, and a cause for reversal, but when the statement is a general one and of a character not likely to prejudice the cause of the accused in the minds of honest men of fair intelligence, the failure of the court to check counsel should not be deemed such an abuse of discretion as to require a reversal."

We have thoroughly examined the evidence and it fully supports the verdict. The jugdment should be affirmed.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court that the judgment herein be and the same is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.