CLYDE HYSLER v. STATE.

181 So. 354.

Division A.

(Case No. 2.)

Opinion Filed February 3, 1938.
Rehearing Denied June 3, 1938.

210

*Sam B. Wilson,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

PER CURIAM.—In this case the defendant was convicted of murder in the first degree without recommendation to mercy. It is a companion case to Case No. 1.

In Case No. 1 the accused was charged and convicted of the murder of John H. Surrency. In this case (No. 2) he was charged and convicted of the murder of Mayme Elizabeth Surrency. Both homicides occurred at the same time and place.

The assignments of error and the questions involved are alike.

The judgment here should be, and is affirmed upon the authority of the opinion and judgment in the other case of Hysler v. State, filed at this Term of the Court.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur.

WHITFIELD, P. J., concurs in the opinion and judgment.

CHAPMAN, J., concurs specially.

BROWN, J., not participating.

CHAPMAN, J. (concurring).—On January 15, 1937, Clyde Hysler, Alvin Tyler and James Baker were indicted by a grand jury of Duval County, Florida, on a charge of murder in the first degree. The first count charged the three defendants as principals in the first degree for the unlawful killing of Mayme Elizabeth Surrency in Duval County, Florida, on the 25th day of November, 1936. The second count of the indictment charged Alvin Tyler with murder in the first degree in the unlawful killing of Mayme Elizabeth Surrency on the 25th day of November, 1936, in Duval County, Florida, and that James Baker and Clyde Hysler were each present, aiding, assisting, procuring and counseling the said Alvin Tyler in the unlawful killing of Mayme Elizabeth Surrency. That on the 27th day of November, 1936, she died of and from mortal wound so inflicted.

On February 25, 1937, the defendants, Alvin Tyler and James Baker, upon arraignment, each filed pleas of not guilty to each count of the said indictment, when defendant Clyde Hysler, through counsel requested additional time in which to plead to the said indictment. On March 15, 1937, the defendant, Clyde Hysler, through counsel, presented in the lower court his motion for a continuance of the trial of the cause for the then present term of the Circuit Court of Duval County, Florida. Other motions, pleas and objections were presented and ruled upon by the lower court. On April 5, 1937, a jury rendered a verdict finding the defendant guilty of murder in the first degree. Defendant filed a motion for a new trial, was adjudged insolvent, judgment entered on said verdict, bill of exceptions signed, writ of error sued out, and the cause is here for review on several assignments of error for a reversal.

It is contended that the lower court erred in overruling and denying defendant's motion for a continuance of the trial until the next term of said court. The motion recited that the defendant was arrested on December 12, 1936, on a charge of murder and had been continuously incarcerated in the common jail of Duval County, Florida, and that the defendant on December 16, 1936, was charged in two indictments with co-defendants Baker and Tyler for the murder of John H. Surrency and his wife, Mayme Elizabeth Surrency. The Court sustained a motion to quash the indictment, but accused was subsequently indicted with the co-defendants and on January 21, 1937, placed on trial, which was concluded on February 12, 1937, resulting in a verdict of murder in the first degree, with recommendations, and sentenced to the State Penitentiary for his natural life. The indictments against the defendant involved the commission of two separate crimes but grew out of one and the same transaction, but an order of severance had been

entered by the lower court. Counsel was retained on December 14, 1936, and their entire time was consumed in the preparation of the defense of the trial of the case beginning January 21st and ending February 12th, 1937; that counsel was engaged in the preparation of defendant's case and had not had sufficient time to prepare for the trial of their cause. The motion alleges prejudice against the family of the defendant on account of charges of crimes alleged to have been committed during the previous years by members of the Hysler family when the trial or trials therefor would occur in the courts of Duval County and bitterness and prejudice established against the defendant and other members of the Hysler family. The newspapers of Duval County gave considerable publicity to the crime for which defendant stands indicted and intense feeling, excitement and animosity existed in the minds of the inhabitants of Duval County against the defendant, which will not only be prejudicial, but will embarrass him obtaining a fair trial; that several other murder cases appear upon the criminal dockets in the courts of Duval County, coupled with the confinement of the defendant in the common jail of Duval County and his inability to otherwise organize his defense, will result in a miscarriage of justice if then placed on trial. The motion is sworn to by the defendant, Clyde Hysler, and contains a certificate of counsel for defendant to the effect that a continuance of the trial of the cause is made in good faith. It is supported by a large number of affidavits. Other recitals appear unnecessary to set forth in this opinion. Affidavits and other evidence was offered in opposition to the motion. The motion was denied by the lower court on March 16, 1937.

The record shows the crime was committed on November 25, 1936, and the defendant arrested in connection therewith on December 12, 1936, and remained in custody

continuously; that he was placed on trial on January 21, 1937, and the suit concluded February 12th, 1937. It is alleged that prejudice existed against him in Duval County and the newspapers inflamed the public mind to his injury. An application for a continuance of a cause is addressed to the sound discretion of the trial court. This Court in the case of Moore v. State, 59 Fla. 23, text p. 30, 52 Sou. Rep. 971, when reviewing an order of the lower court denying a motion for a continuance of the cause, said:

"Motions for a continuance are in the discretion of the trial court, and the action of that court on them will not be reversed unless there has been a palpable abuse of that discretion to the disadvantage of the accused, or whereby his rights may have been jeopardized. The rules as to granting continuances are substantially the same in civil and criminal causes, except as modified by the differences in procedure in the two classes of causes; yet affidavits for continuances should be scanned more closely in criminal than in civil cases, because of the superior temptation to delay presented by the former class. All facts necessary to show a clear abuse of discretion to the injury of the accused must be presented, and wherever the record is either silent or uncertain on any point material to establish such an abuse, the presumptions are all in favor of the correctness of the ruling denying the motion. Ballard v. State, 31 Fla. 266, 12 South. Rep. 865; Adams v. State, 56 Fla. 1, 48 South. Rep. 219; Webster v. State, 47 Fla. 108, 36 South. Rep. 584.

"To justify an appellate court in holding the trial court in error in its ruling denying an application for a continuance in a criminal case, all facts necessary to show clear abuse of discretion to the injury of the accused must be presented and whenever the record is either silent or uncertain on any point material to establish such an abuse,

the presumptions are all in favor of the correctness of the ruling. Gass v. State, 44 Fla. 70, 32 South. Rep. 109."

The law clothes a trial court with broad power and discretion to be exercised by him in his efforts to do substantial justice. It is difficult to fix a rule to govern trial courts when similar questions present themselves, but this Court in the case of Reed v. State, 94 Fla. 32, text p. 51, 113 Sou. Rep. 630, when treating this point, said:

"There is no general principle of law fixing the exact time which must elapse between the finding of the indictment and the beginning of the trial thereon, nor has the Legislature undertaken to fix any minimum time in such matters, but has left it to the discretion of the court to be governed by what is fair and reasonable in each particular case. What might be a sufficient time to prepare for trial in one case might be wholly insufficient in another. Therefore, no hard and fast rule could be applied alike in all cases. * * *"

In the case of Coker v. State, 82 Fla. 5, 89 Sou. Rep. 222, a crime was alleged to have been committed on September 5, 1920, and the grand jury presented an indictment on December 20, 1920. The trial court received the indictment and asked if the defendant was in court. The defendant, over objection of counsel, was arraigned and required to plead. The defendant objected to being placed on trial because he had not had sufficient time to prepare his defense and denied time to reduce to writing a motion for a continuance. He was immediately placed on trial and convicted and the judgment was reversed when this Court said:

"The Constitution of this State provides: that in all prosecutions the accused shall have the right to a speedy and public trial, by an impartial jury, shall be heard by himself or counsel or both, shall have the right to demand

the nature and cause of the accusation against him, the right to meet the witnesses against him face to face, have compulsory process for the attendance of witnesses in his favor and shall be furnished with a copy of the indictment against him. See Declaration of Rights, Sec. 11, Const. 1885. The rights above enumerated naturally grow out of the fundamental principle that every person shall be protected in the enjoyment of his life, liberty and property except as they might be declared to be forfeited by the judgment of his peers or the law of the land. In substance, with the exception of the last provision, the rights enumerated are embraced and made a part of the Sixth Amendment to the Constitution of the United States. They were foreshadowed in the Magna Charta upon which the fabric of constitutional liberty was slowly and patiently erected. See Cooley's Principles of Constitutional Law.

"These provisions secure to every person accused of crime a fair and impartial trial. The words are full of meaning and it is the duty of courts to observe and obey them. Justice requires and it is the universal rule observed in all courts of this country it is most sincerely to be hoped, that reasonable time is afforded to all persons accused of crime in which to prepare for their defense. A judicial trial becomes a farce, a mere burlesque, and in serious cases a most gruesome one at that, when a person is hurried into a trial upon an indictment charging him with a high crime without permitting him the privilege of examining the charge and time for preparing his defense. It is unnecessary to dwell upon the seriousness of such an error; it strikes at the root and base of constitutional liberties, it makes for a deprivation of liberty or life without due process of law, it destroys confidence in the institutions of free America and brings our very government into disrepute. * * * "

The lower court heard the parties, considered the facts, contained in the motion for a continuance, the affidavits in opposition thereto, was familiar with the court records as to criminal charges against different members of the Hysler family, the excitement and prejudice, if any, caused by the newspapers, the diligence of counsel for the defendant from December 12, 1936, until March 17, 1937, the temper of the people of the county where a trial jury was to be obtained, and with all these facts, conditions and circumstances before him at the time of the entry of the order denying the motion for a continuance. It has not been made to appear by the record in this cause that the lower court abused its discretion in entering the order assigned as error.

On March 16, 1937, defendant presented a petition in the lower court for a change of venue in which it is alleged, among other things, that a fair and impartial trial of the defendant's guilt or innocence could not be had in Duval County because Clyde Hysler is odious to the inhabitants thereof; that the defendant has a large family connection by the name of Hysler, who for many years past have resided in Duval County and vicinity; that many of his family connections have criminal records, as shown by the proceedings and records of the State and Federal courts in and for Duval County, and because of the many criminal prosecutions of the Hyslers the name is odious to the inhabitants and is hateful, detestable, and so offensive that this prejudice will not yield to the testimony concerning his guilt or innocence to such an extent that a fair and impartial trial cannot be had or obtained; that named newspapers with large circulations in Duval County since November 25, 1936, have carried a series of false, distorted and untrue articles about the death of Mayme Elizabeth Surrency and husband, John H. Surrency, coupled with

the evil and bad reputation of the Hyslers; that inaccurate accounts and hostile stories of the proceedings of the trial of the defendant for the murder of John H. Surrency were made conspicuous and prominent by these different publications to the detriment and injury of the defendant.

The friends and relatives of the deceased made threats to lynch the defendant. Numerous persons collected on the street corners of the City of Jacksonville when these crimes were discussed; expressions of bitterness and hatred were frequently made by the people of Duval County against the defendant; that the prevailing sentiment as expressed is that the defendant is guilty of the crime; that many inhabitants of Duval County openly stated that the jury is expected to find the defendant guilty; that because of the prejudice and ill feeling existing against the defendant in Duval County makes it impossible to obtain a fair trial. Other material allegations appear but unnecessary to recite in disposing of this assignment. The petition is sworn to and certified to by counsel for defendant "that the motion for a change of venue is made in good faith." Approximately sixty persons signed and filed affidavits in support of the petition for a change of venue.

· The following petition addressed to the trial court was signed by between five and six hundred citizens and residents of Duval County:

"To the Judge of the Circuit Court, in and for Duval County, Florida:

"The undersigned residents and citizens of Duval County, Florida, state that they believe, as a result of conversations they have had with a large number of citizens of Duval County, that it will be impossible for Clyde Hysler to receive a fair and impartial trial in a court held in Duval County on March 15th, 1937, on an indictment charging Clyde Hysler with the murder of Mayme Elizabeth Sur-

rency. The undersigned state that there is a general fixed sentiment and prejudice on the part of practically all the inhabitants of Duval County, Florida, against Clyde Hysler due to the fact that he is a member of a large family of persons now and formerly residing in Duval County who were and are known by the name of Hysler and who were connected with and related to the Hysler family, and are outlaws. That members of the Hysler family have been prosecuted in the courts of Duval County during the past fifteen years on numerous occasions charged with violations of law, and that Clyde Hysler, because being a member of the Hysler family, cannot receive a fair and impartial trial in Duval County on March 15, 1937. That there is a fixed belief that Clyde Hysler is guilty or involved in the alleged murder with which he is charged and that this prejudice and belief is so violent, fixed and widespread that it will be impossible to eliminate it from the minds of any jury selected to try Clyde Hysler on the charge of murder in Duval County, Florida, on March 15, 1937. That there have been numerous detailed accounts published in newspapers of general circulations in Duval County, Florida, as to the alleged facts surrounding the alleged murder with which Clyde Hysler is charged, and the newspaper stories also contain resumes of the evidence and testimony recently given at the trial of Clyde Hysler in Duval County, Florida, wherein Clyde Hysler was charged with another murder alleged to have been committed in the same transaction when Hysler is alleged to have committed the murder of Mayme Elizabeth Surrency. That because of said numerous accounts published daily in the newspapers of Duval County, Florida, there is a general opinion on the part of the public in Duval County, Florida, that Clyde Hysler is guilty of the charge against him and that the introduction of evidence of innocence in his behalf will not remove this

prejudice. That it is the fixed opinion of the undersigned that Clyde Hysler cannot fairly and impartially be tried in a court in Duval County on March 15, 1937, charged with murder. That such trial of Clyde Hysler, in fairness and in justice, must be held in some other county in Florida, other than Duval County."

Approximately 150 affidavits were offered in opposition by the State for a change of venue. The affidavits appear to represent a cross section of the inhabitants of Duval County in which it is frankly stated that a fair and impartial trial could be had in Duval County, Florida. The affidavits offered in support and in opposition to a continuance of the trial were considered by the lower court in the application for a change of venue. The State filed a traverse of the petition for change of venue and some 200 pages of evidence was taken on the issues. Several witnesses were sworn and fully examined when the lower court made the following order:

"THE COURT: I will be glad to hear you all if you want to argue it.

"MR. SEARS: We will submit it without argument, your Honor.

"MR. SIMPSON: Both sides.

"THE COURT: Well, I think I am prepared to rule on it, because I have listened to everything that has been said here, and I also read these affidavits, not only the last ones, but the first, and the petitions. It appears to me that the evidence adduced in support of the application, and also in opposition to it, including the affidavits which were filed here, one on January 22nd, and another one on January 22nd, and the third on January 22nd, and the fourth on January 22nd, three of these being filed by the defendant Hysler in case No. 3428-C, and one by the State; also the affidavit filed here on March 15th by the defendant; also

the petitions filed here on March 15th by the defendant Hysler; and the affidavits herewith filed on March 16th by the State; there were a good many of those papers filed, and I don't know how many petitions, but I understand the names on the petition amounted to something like five hundred, and there were a great many of those affidavits filed, some of them being in exactly the same form. Now, I have considered those affidavits, and I have also considered the testimony of these witnesses who have testified here all day. Although it appears to me that some of this evidence is quite conflicting, and some of it is certainly very weak on both sides, it is my opinion that the allegations of the application have not been sustained. Therefore, the application should be denied. Therefore, it is hereby denied."

Section 4337 C. G. L., 1927, prescribes the procedure and the grounds for a change of venue in a civil or criminal case: (1) on account of the adverse party having an undue influence over the minds of the inhabitants of the County or Justice District; (2) or on account of applicant being so odious to the inhabitants of the County or Justice District, that he could not receive a fair trial. This provision of law has been before this Court in a number of cases. In the case of Greeno v. Wilson, 27 Fla. 492, text pp. 499-500, 8 Sou. Rep. 723, this Court said:

"* * * and if upon the trial of the issue before the judge he shall be 'satisfied' from the *facts* presented that there is substantial ground to support, in the mind of a prudent man, a reasonable fear that he could not receive a fair and impartial trial in the county then it would be the duty of the court to grant the application. Again, the statute requires the 'cause' of such fear to be *'distinctly'* set forth in the petition and supported by the affidavit of the applicant. The meaning of this provision of the statute is to require the applicant to show, first, that he fears his inability to

obtain a fair trial; second, by distinctly setting forth the cause of such fear, he is required to present such substantial facts as would satisfy a reasonable, prudent man that there is a substantial foundation for a reasonable fear that because of the possession by the adverse party of an undue influence over the minds of the inhabitants of the county where the suit is pending, the obtaining of a fair and impartial trial could not be had in such county. The facts to be shown as to the foundation or cause of such fear must be such, in a case like this, as would satisfy the court that the adverse party has, at least, such an influence over the minds of the inhabitants as would preclude a fair trial of the applicant's cause. The word 'undue,' in the sense in which it is used in the statute, signifying that the influence guarded against by the statute is such an influence as may bring about a wrongful and improper result. Facts must be presented in such an application, as the foundation or cause of such fear, not the speculative suppositions or conclusions of the applicant. * * *"

In the case of Singleton v. State, 38 Fla. 297, text pages 304-305, 21 Sou. Rep. 21, 34 L. R. A. 251, 56 Am. St. Rep. 177, this Court said:

"* * * We do not think there was reversible error in the rulings on the application for change of venue and plea in abatement. Under the laws of this State an accused is entitled to be tried by an impartial jury, and when it shall appear to the trial judge that a fair and impartial trial cannot be had in the county where the offense was committed, he should direct that the accused be tried in another county. Under our decisions this matter is left largely to the discretion of the trial court, and its rulings on such matters will not be disturbed unless it appears from the facts presented that the court acted unfairly and committed palpable abuse of a sound discretion."

In the case of Roberts v. State, 72 Fla. 133-34, 72 Sou. Rep. 649, the following procedure was upheld by this Court:

"Death sentences were pronounced against these brothers for the murder of one Emily Wyman.

"Motions for continuance and for change of venue, based upon an asserted aroused public excitement, were interposed and denied.

"The murder was committed June 15, 1915, these men were arrested on the 19th, counsel were retained by them on the 21st, who were notified June 26th that a special term would be held on July 5, to investigate the crime. The term was called, the indictment found July 12, the defendants were arraigned and pleaded and the case set for July 15. The jury was selected with reasonable promptness, the *voir dire* disclosing that the talesmen came from the other side of the county, distant thirty or forty miles from the scene of the crime and possessed only a moderate interest in the case as an item of news. The examination negatived the suggestion of an inflamed public opinion.

"It is true that these defendants were removed to a neighboring county by the sheriff, but there is nothing to indicate that this action on the part of the sheriff was occasioned by other than temporary causes that speedily ceased. Though the time intervening the arrest and the trial was less than usual, we cannot say that it was not sufficient to enable these defendants to prepare their defense. Judging from the vigor of the cross-examination of the State's witness and the number of witnesses appearing for the defendants, their attorneys had both the time and the incentive to give the State a vigorous fight."

In the case of Landrum v. State, 79 Fla. 189, 84 Sou. Rep. 535, this Court said:

"The Judge who passed upon the motion was present, saw the people assemble when the defendants were brought

to the court room, had the whole scene before him, and impressed as he was with the responsibility resting upon him in seeing that these three defendants were tried by a fair and impartial jury, and nothing appearing in the record of any hostility of any of the jurors summoned upon their examination as to their qualification as jurors and the verdict rendered finding the defendants guilty of murder in the first degree with a recommendation to mercy when without such recommendation a sentence of capital punishment would have been adjudged, under the statute, is very high evidence to the writer of this opinion that the jury was not influenced by prejudice and passion; and the action of the judge in denying the motion for change of venue was correct."

In the case of Jeffcoat v. State, 103 Fla. 466, text pp. 468-69, 138 Sou. Rep. 385, this Court said:

"On November 7, 1930, the four defendants filed a motion for a change of venue. This motion was supported by thirty-four affidavits of residents of Pinellas County. Accompanying the motion for a change of venue, were newspaper articles published in the newspapers of Clearwater, St. Petersburg and Tampa purporting to give the evidence against the defendant and his alleged confession. It was also set up by affidavits in support of the motion for a change of venue that by the influence of O. J. Stricklan, constable for Justice of the Peace District No. 2 of Pinellas County, the public mind had been prejudiced against the defendant. In opposition to the motion for change of venue the State introduced some twenty witnesses. The witnesses were from all walks of life in Pinellas County, and from different parts of the county. From their testimony it appears that none of them had heard any threats against the defendants and that so far as they knew, or could find out, the people were not prejudiced against them,

and in their opinion the defendants could receive a fair and impartial trial in Pinellas County. Among these witnesses were merchants, county and city officials, county commissioners and newspaper editors. The witnesses were examined in open court, and· subjected to cross-examination before the court, on the 10th day of November, 1930. After hearing the evidence the court denied the motion of the defendants for a change of venue.

"This Court has held that an application for a change of venue is addressed to the ˙sound discretion of the court and its rulings refusing the change will not be disturbed unless it appears from the facts presented that the court acted unfairly and was guilty of a palpable abuse· of discretion. Under the decisions of this court the matter is left largely to the discretion of the trial court. Adams v. State, 28 Fla. 511; Singleton v. State, 38 Fla. 297; Robertson v. State, 64 Fla. 437; Chisholm v. State, 74 Fla. 50; Pennington and Hand v. State, 91 Fla. 446; Folks v. State, 85 Fla. 238."

The records show that but little trouble was encountered in obtaining a jury in Duval County to try the issues. We have examined briefs for information as to the number of prospective jurors disqualifying themselves to sit upon the trial of the case because of an inflamed and hostile public mind existing in Duval County against the Hysler family. It is likely this fact would have engaged the attention of the trial court when jurors were being examined on their *voir dire* as to their qualifications. The records fail to disclose hostility among the inhabitants of Duval County as against the defendant or his said family to such an extent that a fair and impartial trial could not be given defendant. It is true that such an atrocious crime committed in any county in the Nation is a sufficient provocation to

arouse resentment of decent and upright citizens and create or establish a desire that law, order and good government should prevail. The record fails to show that Duval County was an exception to this rule. We fail to see or observe an abuse of discretion on the part of the lower court in denying the motion or petition for a change in venue.

It is contended that the lower court erred in overruling and denying defendant's motion for a directed verdict: (a) at the close of the State's case; (b) at the close of both the State and defendant's case and after all the evidence had been adduced by the parties. These assignments are numbered 10 and 11 and may be considered as one assignment. Each of these assignments is without merit. In the case of Gravette v. Turner, 77 Fla. 311, text pp. 314-16, 81 Sou. Rep. 476, this Court said:

"In directing a verdict the court is governed practically by the same rules that are applicable in demurrer to evidence. 89 U. S. 116.

"A party moving for a directed verdict admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. Gunn v. City of Jacksonville, 67 Fla. 40, 64 South. Rep. 435.

"When the facts are not in dispute, and the evidence, with all the inferences that a jury may lawfully deduce from it, does not, as a matter of law, have a tendency to establish the cause of action alleged, the judge may direct a verdict for the defendant. But the court should never direct a verdict for one party unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for

such differences as to the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail, and not primarily the views of the judge. In an action for negligence where there is any substantial testimony from which the jury could find the issues in favor of the plaintiff, a peremptory charge for the defendant should not be given. A case should not be taken from the jury by directing a verdict for the defendant on the evidence, unless the conclusion follows as a matter of law that no recovery can be lawfully had upon any view taken of the facts that the evidence tends to establish. The credibility and probative force of conflicting testimony should not be determined on a motion for a directed verdict. The duty devolving upon the court in reference to directing a verdict on the evidence may become, in many cases, one of delicacy, and it should be cautiously exercised. Gunn v. City of Jacksonville, *supra;* Logan Coal & Supply Co. v. Hasty, 68 Fla. 539, 67 South. Rep. 72; Davis v. Drummond, 68 Fla. 471, 67 South. Rep. 99; Poore v. Starr Piano Co., 68 Fla. 425, 67 South. Rep. 99; King v. Coney-Eckstein Co., 66 Fla. 246, 63 South. Rep. 659; Hammond v. Jacksonville Electric Co., 66 Fla. 145, 63 South. Rep. 709; Starks v. Sawyer, 56 Fla. 596, 47 South. Rep. 513."

Assignments of error 1, 2, 3, 6, 7, 8, and 9 are each directed to and call into question the constitutionality of Chapter 16058, Acts of 1933. These assignments can be considered as one. It is contended in the brief for plaintiff in error that Chapter, *supra,* is unconstitutional and void for the reasons:

"1. It violates the spirit of Section 1 of the Declaration of Rights, which provides:

"'All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and

defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety.'

"2. It violates the spirit of Section 3 of the Declaration of Rights, which provides.

" 'The right of trial by jury shall be secured to all, and remain inviolate forever.'

"3. It violates the spirit of Section 11 of the Declaration of Rights, which provides:

" 'In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury * * *'

"4. It violates the letter and spirit of Section 20, Article III of the Constitution, which provides:

" 'The Legislature shall not pass special or local laws in any of the following enumerated cases, that is to say * * * summoning and empanelling grand and petit juries * * *'

"5. It violates the letter and spirit of Section 21, Article III of the Constitution, which provides:

" 'In all cases enumerated in the preceding section all laws shall be general and of uniform operation throughout the state * * *'

"6. It violates the letter and spirit of Section 24, Article III of the Constitution, which provides:

" 'The Legislature shall establish a uniform system of county and municipal government * * *'

"7. It violates the letter and spirit of the Fourteenth Amendment to the Federal Constitution, which provides:

" '* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws * * *' "

Counsel for plaintiff in error files here a strong brief in support of his contentions, *supra,* citations of authorities are given showing an exhaustive and thorough study of the constitutionality of Chapter 16058, Acts of 1933. An examination shows the brief, inadvertently, failed to cite the case of State, *ex rel.* Landis, v. Harris, 120 Fla. 555, 163 Sou. Rep. 237, where each of the questions raised was before this Court. It appears that each question as to the constitutionality of Chapter 16058 as raised here was considered and fully answered. The following utterances give light upon these points:

"The principal provision of Chapter 16058 relate (1) to the qualifications of the persons who may be selected for jury duty, and (2) to the officers who are to perform the statutory functions. The statute does not regulate 'the practice of courts of justice' and does not regulate the 'summoning and empaneling of grand and petit juries'; but the provisions of the statute do have some relation at least to 'summoning and empaneling grand and petit juries,' and classifications for statutory enactments on such subjects should have relation to comprehensive uniformity of regulations to the end that essential provisions on such subjects shall be as near uniform throughout the State as possible, consistent with efficient administration of the law in the various counties of the State.

"In substance, Chapter 16055 required the selection of 'male inhabitants of the county known or believed to be qualified under the laws of Florida to be jurors.'

"Section 4443 (2771) Compiled General Laws, prescribes the qualifications and disqualifications of grand and petit jurors. Section 4444 (2772) requires the county commissioners to select 'from the list of male persons who are qualified to serve as jurors under the provisions of Section 4443, and personally select and make out a list * * *

of persons qualified to serve as jurors, who, in addition to the qualifications above mentioned, shall be such persons only as the said commissioners know, or have good reason to believe, are law abiding citizens of approved integrity, good character, sound judgment and intelligence, and who are not physically or mentally infirm, which list shall be signed and verified by the said commissioners as having been personally selected, as aforesaid, and as possessing the prescribed qualifications according to their best information and belief.'

"In substance, Chapter 16058 requires the selection and listing of made inhabitants of the County known or believed to be qualified under the laws of Florida to be jurors; and requires such list to be certified by the commissioners. Such provisions in effect require the jury commissioners under the new Act to select and certify names of persons who are qualified for jury duty in accordance with existing general laws. Other provisions of Chapter 16058 not contained in the prior general law do not affect the qualifications of those required to be selected for jury duty; and as the provisions prescribing qualifications of the persons to be selected for jury service are of uniform operation throughout the State under both the prior general law and the later Act, there can be no question of classification as to such qualifications. The *number* of names to be selected and certified in large counties and in smaller counties is a matter that should be regulated under *proper* classifications. There are existing statutes on that subject. Secs. 4445 (2773), *et seq.*, C. G. L.; Secs. 4450 (1), *et seq.*, 1934 Cu. Supp. to C. G. L. Classification of counties by population for creating county officers are permissible even if only one county is in a class. State, *ex rel.* Buford, v. Daniel, 87 Fla. 270, 99 So. 804. There is no organic right to have

the names of persons who are qualified for jury duty selected by the county commissioners.

"Chapter 16058 does not violate Section 16, Article III, relating to the title of the Act, or Section 3 of the Declaration of Rights of the State Constitution, relating to the right of trial by jury. Errors in numbering bills in process of enactment are not fatal to the bills. See Volusia County v. State, 98 Fla. 1166, 123 So. 375."

See: Croissant v. Harris, 121 Fla. 141, 163 Sou. Rep. 470. Each of these assignments is controlled by State, *ex rel.* Landis, v. Harris, *supra.*

Grounds of the motion for a new trial from 23 to 32, inclusive, are each based on exceptions to instructions given on the law of the case by the Court. Defendant below presented and requested the Court to give the jury certain special instructions, and are found in the motion for new trial from 33 to 65, inclusive. We have examined the instructions given, as well as special instructions requested to be given. In determining the correctness of charges and instructions, they should be considered as a whole, and if as a whole, they are free from error an assignment predicated on isolated paragraphs or portions which standing alone might be misleading or erroneous must fail. It is well settled that in passing on a single charge or instruction it should be considered in connection with all other instructions and charges bearing on the same subject. The rule is well expressed in Lewis v. State, 55 Fla. 54, text p. 63, 45 Sou. Rep. 998, when it was said:

"It is settled law in this court that in passing upon a single instruction or charge it should be considered in connection with all the other instructions and charges bearing on the same subject, and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated upon the giving of such instruction or

charge must fail, unless under all the peculiar circumstances of the case the court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury. Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, and authorities therein cited; Davis v. State, 54 Fla. 34, 44 South. Rep. 757; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761; Cross v. Aby, decided here at this term. It is also settled law here that where an instruction, as far as it goes, states a correct proposition of law, but is defective because it fails to qualify or explain the proposition it lays down in consonance with the facts of the case, such defect is cured if previous or subsequent charges or instructions are given containing the required qualifications or exceptions. It is not required that a single instruction should contain all the law relating to the particular subject treated therein. Atlantic Coast Line R. Co. v. Crosby, *supra,* and authorities therein cited."

We think the requested charges or instructions to the jury were properly denied by the lower court because the general charge given by the court fully covered the law of the case. See Lowe v. State, 95 Fla. 81, text p. 83, 116 Sou. Rep. 240; Helton v. State, 93 Fla. 232, 111 Sou. Rep. 635; Pennington v. State, 91 Fla. 446, 107 Sou Rep. 331. We fail to find error in the instructions or charges given or the refusal to give the requested charges.

The grounds of the motion for a new trial numbered from 4 to 22, inclusive, have each been considered and ruled upon by the Court when considering, *supra,* other assignments of error. Grounds of the motion for a new trial from 67 to 100, inclusive, challenge or call into question the ruling of the lower court upon the admissibility of evidence to the jury during the trial of the cause. It is difficult to understand how the lower court could have committed 33 sep-

arate and reversible errors in the admission of testimony during the trial. We have not been supplied with citation of authorities by counsel in support of his contention that error was committed. The burden of showing error rests with plaintiff in error or his counsel. We fail to find merit in these assignments.

Grounds 1, 2 and 3, of the motion for a new trial present the question of the sufficiency of the evidence to sustain the verdict as found by the jury in the court below. This Court in considering the sufficiency of the evidence to sustain the verdict in the case of Lindsey v. State, 53 Fla. 56, text pp. 68-69, 43 Sou. Rep. 87, said:

"This court will not reverse a ruling of the trial court refusing a new trial on the ground of insufficient evidence, even though there be conflict in the evidence, unless the preponderance is such that the jury must have been improperly influenced to render the verdict. We can not say such is the preponderance of the evidence in this case."

Likewise in the case of Pickerson v. State, 94 Fla. 268, text pp. 271-72, 113 Sou. Rep. 707, this Court said:

"* * * The bill of exceptions discloses sufficient evidence from which the jury might have legally found or inferred all the essential elements of the offense of which the defendant was found guilty. There is nothing in the record indicating that the jury was influenced by consideration other than the evidence. Under such circumstances the order of the trial court refusing to grant a new trial for insufficiency of the evidence, will not be reversed, unless, after allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided or manifest as to clearly convince the Appellate Court that such verdict is wrong and unjust. * * *"

We have examined the evidence offered by the parties to this cause and find it legally sufficient to sustain the verdict

found by the jury. The motive for the crime was robbery of the husband of Mrs. Mayme Elizabeth Surrency. The defendant induced the two darkies to hold up and take the money of John H. Surrency. He provided them a Ford car, a pistol and some whiskey and gave detailed instructions in carrying out the plans. He was seen with the darkies in the vicinity of the *locus in quo*. He was some distance from the scene when the robbery was attempted and when Mrs. Surrency was killed. From the evidence it is difficult to see or understand how the jury in the Court below could have rendered a verdict other than guilty. We have thoroughly considered each assignment and fail to find error in the trial of the cause in the lower court.

The judgment appealed from is hereby affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.